# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
January 6, 2011

Lyle W. Cayce
Clerk

No. 10-40023

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

RODRIGO RODRIGUEZ,

Defendant-Appellant

Appeal from the United States District Court
for the Southern District of Texas

Before HIGGINBOTHAM, SMITH, and ELROD, Circuit Judges.

PER CURIAM:

Rodrigo Rodriguez pled guilty to two counts of unlawfully transporting illegal aliens within the United States by means of a motor vehicle for private financial gain in violation of 8 U.S.C. § 1324(a)(1)(A)(ii).  The district court found that Rodriguez had recklessly endangered the lives of the illegal aliens he was transporting and enhanced his sentence pursuant to § 2L1.1(b)(6) of the United States Sentencing Guidelines.  Rodriguez's sole challenge on appeal is to the district court's application of the reckless-endangerment enhancement.  We conclude that the district court erred by applying the reckless-endangerment enhancement, vacate Rodriguez's sentence, and remand for resentencing.

No. 10-40023

I.

A gold-colored Ford Explorer was traveling north on Interstate Highway 35 approximately twenty-four miles north of the U.S.–Mexico border. Customs and Border Protection agents observed the vehicle cross over the median, make a U-turn, and pull to a stop on the southbound shoulder of the highway. Five people exited the Explorer and took off running. The Explorer quickly drove off. One agent remained at the site where the Explorer had stopped. He pursued and ultimately detained the five people who had gotten out of the Explorer. All five were illegal aliens. Other agents gave pursuit to and eventually pulled over the Ford. Rodriguez was the driver. Two of the aliens who had been riding in the car gave statements to the agents verifying that they had paid money to be smuggled into the United States. A two-count indictment charged Rodriguez with unlawfully transporting aliens within the United States for financial gain. Rodriguez pled guilty to both counts.

Because the sole issue on appeal is the district court's decision to apply the reckless-endangerment enhancement of § 2L1.1(b)(6),[1] we explain the court's reasons for doing so in some detail. The pre-sentence report ("the PSR") listed three reasons for concluding that the reckless-endangerment enhancement should apply: (1) "there were eight adults riding in the vehicle with a maximum seating capacity of five;" (2) "three of them were stacked in the cargo area of the vehicle;" and (3) "[t]wo women were also left alone all day in the vehicle without food, water, or bathroom facilities." At sentencing, the district court expressly rejected the first and third of these reasons. As to the first, the district court found—based on the reported observations of the agents on the scene—that Rodriguez had only been transporting five aliens in his Explorer. As to the third reason, the district court found that Rodriguez was not responsible for the two

---

[1] *See* U.S. SENTENCING GUIDELINES MANUAL § 2L1.1(b)(6) (2010) (mandating an offense-level increase for an offense that "involved intentionally or recklessly creating a substantial risk of death or serious bodily injury to another person").

women being left alone. On appeal, the government does not argue that either of these two proffered reasons supports application of the enhancement.

The district court's treatment of the allegation that there were three aliens "stacked" in the cargo area of the Explorer is unclear. At sentencing, the government appeared to disclaim any reliance on the fact that there were multiple aliens in the cargo area of the vehicle. However, the district court never made a factual finding that there were not aliens stacked in the cargo area. Because the district court expressly accepted the findings of the PSR, we treat the finding that there were three aliens stacked in the Explorer's cargo area as one of two factual findings that could possibly support the district court's application of § 2L1.1(b)(6).[2]

The second factual finding on which the district court appears to have relied was argued for the first time by the government at the sentencing hearing. The government contended that the manner in which Rodriguez drove the Explorer—specifically, the fact that he made a U-turn across a median on an interstate highway—created a substantial risk that others would suffer death or serious bodily injury. By making a U-turn across the highway, the government argued, Rodriguez created a risk of a collision with oncoming traffic, recklessly endangering everyone in his car and everyone in the cars traveling southbound on the highway. Rodriguez responded that there was no evidence in the record that there was any traffic coming southbound at the time he made

---

[2] It is not entirely clear that the district court in fact adopted the PSR's finding that three aliens were "stacked" in the Explorer's cargo area. The PSR based that finding on its belief that there were seven total aliens in the Explorer, two of whom were not apprehended. According to the PSR, one of the aliens who was not apprehended had been "stacked" in the cargo area. The district court's explicit finding that there were only five aliens in the Explorer appears to entail the conclusion that there were, at most, two aliens riding in the cargo area. Because we ultimately conclude that the sentence enhancement was not warranted even if there were three aliens in the Explorer's cargo area, *see infra* section II(A), we need not resolve this factual question.

the U-turn. The district court did not make any express finding of fact on this issue, either at the sentencing hearing or in its statement of reasons.[3]

The district court ultimately concluded—over Rodriguez's objection—that the reckless-endangerment sentence enhancement was applicable. Rodriguez's criminal-history category was I, and the district court calculated Rodriguez's total offense level as thirteen. The district court determined the Guidelines' advisory sentencing range was twelve-to-eighteen months and imposed an eighteen-month sentence.

## II.

We review *de novo* the district court's application and interpretation of § 2L1.1(b)(6) of the Guidelines.[4] A district court cannot impose a sentence enhancement such as § 2L1.1(b)(6) unless the government has proven any facts necessary to support the enhancement by a preponderance of the evidence.[5] We review for clear error the factual findings a district court makes in support of its decision to apply the § 2L1.1(b)(6) enhancement.[6] The clear-error standard of review is a deferential one.[7] Clear-error review only requires a factual finding

---

[3] After hearing the government's argument that the U-turn supported the enhancement, the court simply said, "All right. Is there anything else?"

[4] *See United States v. Solis-Garcia*, 420 F.3d 511, 514 (5th Cir. 2005); *United States v. Garcia-Guerrero*, 313 F.3d 892, 895 (5th Cir. 2002).

[5] *See United States v. Conner*, 537 F.3d 480, 491–92 (5th Cir. 2008); *United States v. Rodriguez*, 523 F.3d 519, 524 (5th Cir.), *cert. denied*, 129 S. Ct. 624 (2008); *United States v. Le*, 512 F.3d 128, 135 (5th Cir. 2007) (quoting *United States v. Herrera-Solorzano*, 114 F.3d 48, 50 (5th Cir. 1997)); *United States v. Rabanal*, 508 F.3d 741, 743 (5th Cir. 2007) (quoting *United States v. Alfaro*, 919 F.2d 962, 965 (5th Cir. 1990)).

[6] *United States v. Mata*, 624 F.3d 170, 174 (5th Cir. 2010) (per curiam).

[7] *United States v. Betancourt*, 422 F.3d 240, 246 (5th Cir. 2005) (quoting *United States v. Alford*, 142 F.3d 825, 831 (5th Cir. 1998)).

to be plausible in light of the record as a whole.[8]   We will not conclude that a district court's finding of fact was clearly erroneous based only on our belief that, "'had [we] been sitting as the trier of fact, [we] would have weighed the evidence differently'" and made a different finding.[9]   Rather, we will conclude that a finding of fact is clearly erroneous only if a review of all the evidence leaves us "'with the definite and firm conviction that a mistake has been committed.'"[10]

Section 2L1.1(b)(6) increases the base offense level of any defendant who transported illegal aliens in a manner that "involved intentionally or recklessly creating a substantial risk of death or serious bodily injury to another person." We have acknowledged that § 2L1.1(b)(6) "is intended to apply to 'a wide variety of conduct'"[11] but also cautioned that "its words must be given some restrictive meaning."[12]   In *United States v. Zuniga-Amezquita*,[13] we identified five factors that determine the propriety of applying § 2L1.1(b)(6)'s reckless-endangerment enhancement: "the availability of oxygen, exposure to temperature extremes, the aliens' ability to communicate with the driver of the vehicle, their ability to exit the vehicle quickly, and the danger to them if an accident occurs."[14]

Applying those factors to the facts of this case leads us to conclude that the district court erred in determining that Rodriguez's conduct falls within the

---

[8] *United States v. Williams*, 610 F.3d 271, 292 (5th Cir. 2010) (quoting *United States v. Miller*, 607 F.3d 144, 148 (5th Cir. 2010)).

[9] *United States v. Charon*, 442 F.3d 881, 891 (5th Cir. 2006) (quoting *United States v. Harris*, 434 F.3d 767, 773 (5th Cir. 2005)).

[10] *United States v. Castillo*, 430 F.3d 230, 238 (5th Cir. 2005) (quoting *United States v. Cooper*, 274 F.3d 230, 238 (5th Cir. 2001)).

[11] *Mata*, 624 F.3d at 174 (quoting U.S. SENTENCING GUIDELINES MANUAL § 2L1.1 cmt. 5 (2009)).

[12] *Solis-Garcia*, 420 F.3d at 516.

[13] 468 F.3d 886 (5th Cir. 2006).

[14] *Id.* at 889.  This list of factors "is not exhaustive," *id.* at 889 n.4, but the government has not urged us to affirm Rodriguez's sentence based on any factor not included on this list. Accordingly, we confine our analysis to the five factors enumerated in *Zuniga-Amezquita*.

ambit of § 2L1.1(b)(6).  The record as a whole suggests that the district court decided to apply the enhancement either because there were three aliens in the Explorer's cargo area, or because Rodriguez made a U-turn across I-35.  The government does not argue—and there is no plausible basis in the record to conclude—that either of these facts indicates that the five aliens in Rodriguez's car lacked access to oxygen, were exposed to temperature extremes, or could not communicate with Rodriguez.  We conclude that neither of the district court's reasons for applying § 2L1.1(b)(6) supports the conclusion that the aliens lacked the ability to quickly exit the vehicle or would have been seriously endangered by an accident.

## A.

The district court's finding that there were three aliens "stacked" in the Explorer's cargo area cannot sustain its decision to apply § 2L1.1(b)(6).  Our decision in *United States v. Solis-Garcia*[15] compels us to conclude that the fifth *Zuniga-Amezquita* factor, the danger to the aliens if an accident occurs, counsels against applying the enhancement here.  In *Solis-Garcia*, four illegal aliens were lying side-by-side in the cargo area of a minivan driven by the defendant.[16]  We reversed the district court's application of § 2L1.1(b)(6) because the defendant's conduct "did not create a *substantial* risk of *death* or *serious* bodily injury:"

> The only dangers we consider to be associated with riding in the cargo area of the minivan are generally the same dangers that arise from an individual not wearing a seatbelt in a moving vehicle. The § 2L1.1(b)(5) enhancement as written, one would think, does not extend so far as to increase punishment for offenders simply for transporting illegal aliens without requiring them to wear seatbelts.[17]

---

[15] 420 F.3d 511 (5th Cir. 2005).

[16] *Id.* at 513.

[17] *Id.* at 516.  Prior to 2006, current § 2L1.1(b)(6) was codified at § 2L1.1(b)(5). *See* U.S. SENTENCING GUIDELINES MANUAL supp. app. C amend. 692 (2010).

Post-*Solis-Garcia*,"transporting aliens in the cargo area of a van, without more, does not justify the application of" the reckless-endangerment enhancement.[18]   We are aware of no reason—and the government has not posited one—why riding in the cargo area of an SUV is any more dangerous than riding in the cargo area of a minivan.  Accordingly, we are persuaded that *Solis-Garcia* establishes that "carrying passengers in the cargo area of a sport utility vehicle" does not justify a reckless-endangerment enhancement in the absence of other aggravating factors.[19]

The government directs our attention to several cases in which we have upheld the application of § 2L1.1(b)(6) on the ground that the aliens' ability to exit the vehicle was impeded (the fourth of *Zuniga-Amezquita*'s five factors).  But each of those cases presented some kind of aggravating factor: the alien had contorted himself into a compartment,[20] was crammed into a tight space,[21] or had been surrounded by objects that were too heavy to move.[22]  The district court did not find that any such aggravating factor was present here.  The government points to the PSR's characterization of the three aliens as having been "stacked" in the cargo area.  But nothing in the record suggests that the aliens' ability to

---

[18] *Zuniga-Amezquita*, 468 F.3d at 889.

[19] *United States v. Goodman*, 359 F. App'x 480, 481 (5th Cir. 2009) (per curiam). Although this unpublished decision is not binding precedent, we find its reasoning persuasive. *See generally* 5TH CIR. R. 47.5.4.

[20] *United States v. Rodriguez-Mesa*, 443 F.3d 397, 403 (5th Cir. 2006) (per curiam) (affirming application of the enhancement where the alien was concealed in a specially constructed console built into the middle of a minivan that covered the alien's head and torso and forced his legs into the passenger-side floorboard).

[21] *United States v. Garza*, 587 F.3d 304, 309 (5th Cir. 2009) (per curiam) (affirming application of the enhancement where the aliens were "lying on the floorboards, partially under the back seat and 'wedged between' the front seat and the back seat, with a child sitting on top of the back seat").

[22] *Zuniga-Amezquita*, 468 F.3d at 890 (affirming application of the enhancement where the aliens were inside a van and surrounded by boxes and luggage that were "packed so tightly around the aliens that there is no place to set a box that has been moved out of the way" and also "quite heavy and difficult to move").

quickly exit the vehicle was impeded. To the contrary—it is undisputed that when Rodriguez pulled over to the side of the highway, all five of the aliens immediately got out and began running. We thus conclude that the facts presented here do not warrant application of the § 2L1.1(b)(6) enhancement based on the inability of the aliens in the cargo area to quickly exit the vehicle.[23]

Transporting three aliens in the cargo area of an SUV in a manner that preserves their ability to quickly exit the vehicle does not increase the dangers associated with an accident so greatly as to constitute reckless endangerment. On the facts as found by the district court, it was error to apply § 2L1.1(b)(6) based on the presence of three aliens in the cargo area of Rodriguez's Explorer.[24]

B.

As to the district court's second possible basis for applying § 2L1.1(b)(6), the government failed to carry its burden of proving by a preponderance of the evidence that Rodriguez endangered the five aliens in his car or other drivers on the road by making a U-turn across the highway. Rodriguez made the U-turn at approximately 11:00 p.m. As Rodriguez argued at sentencing, the government introduced no evidence showing that the highway was heavily trafficked at that time, that Rodriguez was driving recklessly, or that Rodriguez's U-turn was

---

[23] *See also United States v. Pineda-Jimenez*, 212 F. App'x 369, 373 (5th Cir. 2007) (unpublished) (reversing the application of § 2L1.1(b)(6) to a defendant who transported nine aliens in the bed of a pickup truck under a camper cover (distinguishing *United States v. Cuyler*, 298 F.3d 387 (5th Cir. 2002))).

[24] The commentary to § 2L1.1(b)(6) gives as an example of conduct that would warrant application of the enhancement "carrying *substantially more* passengers than the rated capacity of a motor vehicle." *See* U.S. SENTENCING GUIDELINES MANUAL § 2L1.1 cmt. 5 (2010) (emphasis added). A Ford Explorer is rated to carry five people, while Rodriguez's Explorer was carrying six. We do not read the commentary to § 2L1.1 as encompassing Rodriguez's conduct, *see, e.g.*, *United States v. Hernandez-Perez*, 366 F. App'x 531, 532 (5th Cir. 2010) (per curiam) (applying comment 5 to a defendant who had transported fifteen people in a vehicle rated to carry seven), and the government concedes that "[o]ther than the mention of harboring persons in a dangerous condition, nothing in the commentary directly speaks to transporting an alien in a cargo area behind the back seats of an SUV."

illegal, dangerous, or even risky. It is not enough that the government argued as much at sentencing. The government had the burden of introducing evidence establishing that Rodriguez's U-turn imperiled him, the aliens, or other drivers.[25] Having reviewed the entirety of the record,[26] we have found no evidence to substantiate this argument. Our review of the record thus leaves us with the definite and firm conviction that, to the extent the district court made a finding of fact that Rodriguez's U-turn was dangerous or reckless,[27] that finding was mistaken.

We emphasize that our decision rests on a narrow, case-specific ground: the lack of evidence to sustain a finding that Rodriguez's U-turn was dangerous. This court has never previously addressed the question of whether dangerous or reckless driving can support the application of the § 2L1.1(b)(6) enhancement. Because we hold that the government failed to carry its burden of proving that Rodriguez engaged in such driving, we have no occasion to express any opinion on that broader legal question.

### III.

The district court erred by enhancing Rodriguez's sentence pursuant to § 2L1.1(b)(6). We vacate Rodriguez's sentence and remand to the district court for resentencing.

---

[25] *See supra* note 5 and cases cited therein.

[26] We can affirm a sentence on any ground that finds support in the record. *See United States v. Trevino-Banda*, No. 98-41370, 189 F.3d 469, 1999 WL 548642, at *2 (5th Cir. July 8, 1999) (per curiam) (unpublished table disposition) (citing *United States v. McSween*, 53 F.3d 685, 687 n4. (5th Cir. 1995)).

[27] It is not clear from the record that the district court in fact did make such a finding. *See supra* note 3 and accompanying text.