PER CURIAM: *
Terrence Chemise Ewing, convicted for being a felon in unlawful possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), presents one issue on appeal. He challenges a six-level sentence enhancement imposed pursuant to Guidelines §§ 2K2.1(b)(1)(A) (increase by two levels for possession of three to seven firearms) and 2K2.1(b)(4)(B) (increase by four levels if serial number on any firearm is altered or obliterated). AFFIRMED.
I.
On 16 February 2011, Waco, Texas, police department officers were dispatched to 1615 Harrison Avenue, in Waco, in response to a reported assault. Upon arrival, Ewing was seen running toward, and entering, a vehicle; after he drove around the corner, the officers stopped him. After Ewing exited the vehicle, he was placed in handcuffs and searched incident to his arrest.
At that time, another officer learned Ewing allegedly sexually assaulted a 15-year-old girl at Ewing’s home, which was nearby at 1510 Harrison Avenue. Officers obtained a search warrant for that address. The search produced three firearms: two were discovered in the living-room closet, one with an obliterated serial number; one, in Ewing’s bedroom. After officers learned Ewing had been convicted of a felony, he was arrested.
A 12 April 2011 indictment charged Ewing with being a felon in unlawful possession of:

at least one of the following firearms, to-wit:

A Lorcin, .380 caliber semi-automatic handgun, with unknown serial number;
A Terrior One, .32 caliber revolver
A Smith & Wesson, ... semi-automatic handgun ...;
which had moved in commerce and affecting commerce, in violation of [18 U.S.C. §§ ] 922(g)(1) and 924(a)(2).
(Emphasis added.) After a two-day trial in January 2012, a jury found Ewing guilty. The verdict did not require specifying which firearm Ewing unlawfully possessed.
Less than two months later, at the sentencing hearing presided over by the district judge who had presided at Ewing’s trial, the court rejected Ewing’s enhancement challenge, quoted infra, and adopted the pre-sentence investigation report (PSR), which recommended, inter alia: a two-level enhancement for officers’ discovering three firearms in Ewing’s possession, pursuant to Guideline § 2K2.1(b)(l)(A); and a four-level enhancement for an obliterated serial number on one of the firearms in his possession, pursuant to Guideline § 2K2.1(b)(4)(B). As a result of the six-level enhancement’s being applied, Ewing’s offense level increased to 26; together with his criminal-history category of five, his advisory Guidelines sentencing range was 110 to 137 months’ imprisonment (without the six-level enhancement, the range would have been 63 to 78 *386 months). Because, pursuant to 18 U.S.C. § 924(a)(2), the maximum term of imprisonment was 120 months, the high-end of the range was changed to 120 months. Ewing was sentenced, inter alia, to 110 months’ imprisonment.
II.
As noted, for conviction, the jury was required only to attribute one of the three discovered firearms to Ewing. He acknowledges the Smith and Wesson pistol was found in his bedroom and contained his DNA; he does not contest the conviction. He challenges only the six-level enhancement.
Ewing’s challenge to the enhancement arises out of its requiring the two firearms found in the living-room closet to be attributed to him. Consistent with his objection to the PSR, he asserts there was insufficient evidence to establish either his knowledge of those two firearms in the home, or an intent to exercise dominion and control over them.
Because Ewing preserved his sentence-enhancement challenge in district court, his sentence is reviewed for reasonableness under an abuse-of-discretion standard. E.g., Gall v. United States, 552 U.S. 38, 50-51, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007). The court’s interpretation and application of the advisory Sentencing Guidelines is reviewed de novo; its factual findings, only for clear error. E.g., United States v. Cisneros-Gutierrez, 517 F.3d 751, 764 (5th Cir.2008); United States v. Villegas, 404 F.3d 355, 359 (5th Cir.2005).
The enhancement ruling at issue is a finding of fact, reviewed only for clear error. United States v. Rodriguez, 630 F.3d 377, 380 (5th Cir.2011). In that regard, “[a] district court cannot impose a sentence enhancement ... unless the [Government has proven any facts necessary to support the enhancement by a preponderance of the evidence”. Id. The burden of proof to establish such a preponderance requires “evidence, which, as a whole, shows that the fact sought to be proved is more probable than not”. 3 Fed. Jury Prac. & Instr. § 104:01. Such evidence, “when considered and compared with the evidence opposed to it, has more convincing force, and produces [a] belief that what is sought to be proved is more likely true than not true”. Id.
It goes without saying that the dear-error standard of review is deferential. E.g., Rodriguez, 630 F.3d at 380. There is no clear error if the challenged findings are “plausible in [the] light of the record as a whole”. Cisneros-Gutierrez, 517 F.3d at 764. Re-stated, a finding of fact is clearly erroneous “only if a review of all the evidence leaves us with the definite and firm conviction that a mistake has been committed”. Rodriguez, 630 F.3d at 380 (internal quotation marks and citation omitted).
For sentencing, to properly calculate the number of firearms attributable to defendant, the court may include only firearms unlawfully possessed. U.S.S.G. § 2K2.1(b)(l) cmt. n. 5. Where, as here, there was no actual possession of the firearms, the court must find constructive possession vel non, defined as “ownership, dominion, or control over the item itself, or control over the premises in which the item is concealed”. United States v. Houston, 364 F.3d 243, 248 (5th Cir.2004) (citing United States v. Mergerson, 4 F.3d 337, 349 (5th Cir.1993)).
The searched residence was the home of Ewing’s parents, which had belonged to Ewing’s great-grandmother. Ewing was 12 when his family moved into the house in 1995; he moved out in 2000, around age 17, and returned approximately 10 years later, in November 2010, when he was 27 *387 years of age. In that vein, Ewing’s joint occupancy of the residence cannot “by itself’ establish constructive possession. Houston, 364 F.3d at 248.
In such instances, our court applies a “commonsense, fact-specific approach”, Mergerson, 4 F.3d at 349 (internal quotation marks and citation omitted), to determine whether the evidence supports “a plausible inference that the defendant had knowledge of, and access to, the item[s]”. Houston, 364 F.3d at 248 (citing United States v. Hinojosa, 349 F.3d 200, 204 (5th Cir.2003)); see Mergerson, 4 F.3d at 348-49 (no plausible inference for constructive possession where weapon not in plain view and pawnshop receipt indicated co-defendant purchased weapon well before co-habitating with defendant). There need not be an affirmative link between defendant and the items. Mergerson, 4 F.3d at 349.
Because the two contested firearms were found in a bag underneath various items in the living-room closet, the facts arguably align with “hidden compartment” cases, in which the knowledge element can be satisfied only through “additional circumstantial evidence that is suspicious in nature or demonstrates guilty knowledge”. United States v. Mudd, 685 F.3d 473, 477 (5th Cir.2012) (internal quotation marks and citation omitted). Such circumstantial evidence includes inconsistent statements or implausible explanations, and is sufficient to establish knowledge. Id. at 478.
Prior to the sentencing hearing, Ewing filed the following objection to the six-level enhancement:
Terrence Ewing objects to paragraph 23 of the [PSR] which adds 6 points (2 -I- 4) for the 2 firearms found in the front closet of the house. The basis for this objection is that (a) the house was owned and occupied by Emory & Sandra Ewing, not Terrence Ewing; (b) during the trial there was no evidence connecting Terrence Ewing to the two firearms in the front closet; (c) the only evidence presented at trial was that the 2 guns had been placed in the front closet by Terrence Ewing’s great-grandmother and Terrence Ewing knew nothing about the firearms; (d) there is no information in the offense report which would, in any way, connect Terrence Ewing to the firearms in the closet; and (e) the [PSR] fails to remind the court that Terrence Ewing only lived in the house for [sic] short time and that the guns found in the front closet where [sic] hidden from view.
The following related colloquy occurred at the sentencing hearing:
The Court: [Defense counsel], what matters need to be ruled on this afternoon?
[Defense counsel]: Your Honor, just one issue and that is whether or not the two guns that were found in the front closet of Terrence Ewing’s parents’ house should be attributed to Terrence Ewing. I think six points was [sic] added for that. Our argument is that mere presence alone is not enough to add that, that there was no affirmative evidence that showed that Mr. Ewing — Terrence Ewing knew of those weapons in the closet. In fact, the only evidence presented was that those guns had been placed in the closet years prior when Terrence Ewing was not living in the house and that he — that Terrence Ewing did not know about those weapons. The Court: Wait. Wait. You said the only evidence. Where is that evidence found?
[Defense counsel]: That evidence comes from the testimony of Emory Ewing [defendant’s father] and — well, the witnesses — all the defense witnesses testified to that at the trial.
*388 The Court: Okay.
[Defense counsel]: And they’re here in the courtroom if the Court needs them to testify again.
I would also point out that had the government relied on those weapons in their closing argument, that might have been something, but they didn’t. And since there was another gun and the only argument that the government made concerned the gun that had the DNA on it that was next to Terrence Ewing. Again, that’s some indication that the guns in the closet had no connection whatsoever to Terrence Ewing. And so based on that, I mean, we understand that they’re in the house that he’s in and it’s a common area, but at the same time without — if you don’t have something more than mere presence, our argument is that’s just not enough.
(Emphasis added.) Following additional argument by Ewing and the Government, the court ruled as follows: “The Court would find that the firearms are properly attributed to Mr. Ewing and overrule the objections” to the six-level enhancement recommended by the PSR.
“Generally, a PSR bears sufficient indi-cia of reliability to permit the sentencing court to rely on it at sentencing. The defendant bears the burden of demonstrating that the PSR is inaccurate; in the absence of rebuttal evidence, the sentencing court may properly rely on the PSR and adopt it.” United States v. Ollison, 555 F.3d 152, 164 (5th Cir.2009) (citation and internal quotation marks omitted). For the basis for the recommended six-level enhancement, the PSR stated: “Officers discovered in the living room closet two pistols”, on one of which “[t]he serial number had been scratched off’; because “the instant offense involved three (3) to seven (7) firearms, add two (+2) levels”, and because “defendant possessed a firearm with obliterated serial numbers, increase by four (+4) levels”. As discussed, the only evidence relied upon to challenge the PSR’s six-level-enhancement recommendation is the trial testimony of Ewing’s father, mother, grandmother, and girlfriend.
Along that line, Ewing did not testify at trial. His mother, father, grandmother, and girlfriend testified on his behalf. Each of the three family members testified that Ewing had no knowledge of the firearms in the closet; the girlfriend testified only concerning the firearm found in Ewing’s bedroom.
The testimony by the family members was consistent in each stating Ewing’s great-grandmother placed the two firearms in the living-room closet; but, the details in that regard are less certain. Ewing’s father and grandmother were certain the firearms were placed in the closet in 2000; but, Ewing’s mother testified it could have been anytime between 1996 and 2000. With respect to from whom the firearms were obtained, one testified it was Ewing’s great-grandfather; one, Ewing’s great-grandmother’s “live-in friend”; and the other, Ewing’s step great-grandfather. Ewing’s grandmother and mother testified each firearm was obtained on a separate occasion, and each time placed in the closet; but, Ewing’s father’s testimony suggests both firearms were obtained and placed in the closet at the same time. Ewing’s father and mother testified the firearms were obtained because Ewing’s great-grandfather (or step great-grandfather, or his great-grandmother’s “live-in friend”, whichever is accurate), who brought the firearms to the house, was intoxicated, whereas Ewing’s grandmother stated the events had nothing to do with alcohol. And each family member testified the other two family members were present, except Ewing’s mother could not re *389 member if Ewing’s father was present. (The dissent takes issue with relying on the lack of credibility of witness testimony as evidence of defendant’s guilt. See Dissent at 393. As noted, Ewing exercised his right not to testify at trial; he chose not to testify at sentencing as well, which, too, was his right. The testimony of his witnesses was, therefore, all the more important. At sentencing, the burden was on Ewing — not the Government — to establish the PSR was unreliable. E.g., Ollison, 555 F.3d at 164. His relying only on the testimony of his witnesses to rebut the PSR left the district court with the requirement to examine their credibility in concluding whether the firearms in the closet should be attributed to Ewing.)
Other testimony from Ewing’s family members called into question their credibility as well. (The dissent fails, for the most part, to address this portion of the defense witnesses’ testimony, relying only on their testimony related to the firearms in the closet to conclude it does not incriminate Ewing. See Dissent at 392-93. This narrow review ignores the requirement that evidence must be reviewed as a whole before a finding of fact can be overturned. See, e.g., Johnson v. Collins, 964 F.2d 1527, 1532 (5th Cir.1992) (“[A] review of all of the evidence” must leave our court with the “definite and firm conviction that a mistake has been committed” before findings of fact may be overruled.). This is an obvious matter the court could have relied upon in concluding the firearms in the closet were properly attributed to Ewing.) Ewing’s mother and grandmother testified they did not approve of firearms, did not know anything about them, and did not want them in the house, yet, according to their testimony, they left these firearms in the home for over a decade. Even though Ewing’s mother testified she was not comfortable around firearms, she allegedly took the Smith and Wesson (the firearm discovered in Ewing’s bedroom) from a young man named Kenny in her front yard who was confronting another young man in a heated argument after Kenny pulled the firearm on the young man — a situation she considered “dangerous”. She then took this loaded firearm, with a round in the chamber, and threw it in a clear bin containing clothes. The testimony by Ewing’s parents was extremely detailed regarding the state of the bin: they noticed ashes and dust on the lid, indicating it had not been removed recently; the bin was so close to the wall the lid could not be lifted without moving the bin; and there were no indentations in the carpet indicating the bin had been moved. On the other hand, while Ewing’s father testified on direct he forgot about the firearm in the bedroom, on cross he testified he asked someone to retrieve the weapon; Ewing’s mother testified on cross she later tried to return the firearm in the bedroom. (The dissent concludes our reliance on this testimony to find implausibility is in error. See Dissent at 394 (stating the contradictions in the testimony “were on such minor points, and nothing was implausible”, that an inference of guilty knowledge is not present). Again, at sentencing, the burden was on Ewing to establish the PSR’s unreliability, Ollison, 555 F.3d at 164; and his rebutting the PSR only with the testimony of his witnesses left the court to rely on that testimony as well. As discussed, the Government was required to establish only by a preponderance of the evidence the enhancements were proper; and, our review is only for clear error.)
At trial, beyond Ewing’s living in the home with his parents and his access to the common area where the two firearms were located, the Government did not present evidence suggesting Ewing had knowledge of the firearms in the living- *390 room closet. The Government focused its attention primarily on the firearm in the bin in Ewing’s bedroom; for the two firearms in the living-room closet, the Government pursued discrediting Ewing’s witnesses on cross-examination.
At sentencing, the Government asserted only that the evidence presented at trial showed the two firearms in the closet were in a common area of the home where Ewing resided, of which he would have access, dominion, and control, and those firearms were charged in the indictment that went to the jury. As noted, neither party presented additional evidence at the sentencing hearing; as also noted, Ewing’s family was present to testify if needed. After hearing from each side, and finding the PSR “properly attributed” the firearms to Ewing and, therefore, denying his objection to the six-level enhancement recommended by the PSR, the court heard Ewing’s denial of knowledge of all three firearms, including the one in his bedroom, when he accepted the court’s invitation for allocution: “[H]ad I known the guns was [sic] in the house I would have got [sic] rid of them.... Or I would have had my mother and them get rid of them”.
As discussed, the Government was required only to satisfy a preponderance-of-the-evidence standard for the enhancements to be imposed. Pursuant to our review of the record, and given the applicable deferential clear-error standard of review, Rodriguez, 630 F.3d at 380, and the “commonsense, fact-specific approach” on whether Ewing constructively possessed the two firearms in the livingroom closet, Mergerson, 4 F.3d at 349 (internal quotation marks and citation omitted), the district court did not clearly err in adopting the PSR’s recommended six-level enhancement. Re-stated, “a review of all the evidence [does not] leave[] us with the definite and firm conviction that a mistake has been committed”. Rodriguez, 630 F.3d at 380 (internal quotation marks and citation omitted).
There is no question Ewing had access to the two firearms because of their location in a common area of the home where he resided. For the knowledge requirement, as Ewing was 17 years old at the time the firearms were supposedly placed in the closet, it is plausible he would have learned of their presence over the next ten years. The only evidence presented to contest Ewing’s knowledge was the testimony of his family members, which contained numerous inconsistencies. The family members’ testimony concerning their opinions of firearms, as compared to their treatment of the firearms in their home, calls into question their credibility as well. Needless to say, the district judge, who presided at trial, had the opportunity to evaluate their credibility.
“When findings of fact are based on credibility determinations regarding witnesses, we must show even more deference to the trial court’s findings.” Johnson, 964 F.2d at 1532 (citing Anderson v. City of Bessemer, 470 U.S. 564, 574, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985)). And, Ewing’s statements at the sentencing hearing asserting he “would have got [sic] rid of’ the firearms had he known they were there is inconsistent with his DNA on the firearm in his bedroom, yet he did not “g[e]t rid of’ that firearm. Accordingly, it is “plausible in [the] light of the record as a whole” that Ewing was in constructive possession of the two firearms in the living-room closet, rendering the six-level-enhancement finding not clearly erroneous. Cisneros-Gutierrez, 517 F.3d at 764.
III.
For the foregoing reasons, the judgment is AFFIRMED.

 Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.