# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
August 5, 2021

Lyle W. Cayce
Clerk

No. 20-40776

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

SERGIO ROEL GONZALEZ, JR.,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 7:20-CR-1341-1

Before JONES, SOUTHWICK, and ENGELHARDT, *Circuit Judges*.
PER CURIAM:*

The only issue on appeal concerns sentencing. The district court applied an enhancement for "reckless endangerment during flight" because the defendant, who was driving with several undocumented immigrants as passengers, did not stop his slow-moving vehicle before he jumped out to escape arrest. We conclude such conduct was reckless and AFFIRM.

---

* Pursuant to 5TH CIRCUIT RULE 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIRCUIT RULE 47.5.4.

No. 20-40776

## FACTUAL AND PROCEDURAL BACKGROUND

Sergio Roel Gonzalez, Jr. pled guilty to transporting an alien within the United States for private financial gain. The probation officer prepared a presentence report ("PSR") that described Gonzalez's offense conduct. According to the PSR, shortly after 11:00 p.m. on August 4, 2020, immigration agents responded to reports that a group of suspected undocumented immigrants had been seen walking into a neighborhood in Rio Grande City, Texas. The responding agents arrived at that neighborhood and observed a Chrysler 300 vehicle with several passengers "approaching their route of travel at a low rate of speed." Later it became known that Gonzalez was the driver and the immigrants had just gotten into the vehicle.

The agents got out of their vehicle to perform an immigration inspection of all the occupants of the Chrysler 300. Gonzalez "immediately exited" his vehicle and fled on foot. The driverless vehicle he left behind was still moving, "slowly revers[ing] into the driveway of a nearby residence." The passengers also got out of the moving vehicle and fled; the agents pursued.

While the agents gave chase, they saw the unoccupied Chrysler 300 move towards their own vehicle, collide with it, and stop. According to the PSR, the "[a]gents speculated that while the remaining subjects were exiting the vehicle, the shifter of the vehicle was moved to drive." Gonzalez and three others were apprehended; one person escaped on foot and was not caught. None of the suspects were injured.

Gonzalez refused to talk with agents, but one of the passengers did. Edson Manzanillo told agents that, after crossing the Rio Grande into the United States and walking for approximately one hour, guides escorted him and three other aliens to a waiting Chrysler 300. Gonzalez, who was at the

wheel, instructed them to "lay down and conceal themselves" in the vehicle. Manzanillo stated that

> Sergio Gonzalez drove for a few seconds and without notice, he quickly exited the vehicle. Edson Manzanillo advised that Sergio Gonzalez attempted to park the vehicle prior to exiting. However, the vehicle was placed [in] reverse and remained in motion, at which time, he and the other undocumented aliens also decided to exit the vehicle.

Gonzalez's base offense level was 12. The probation officer increased the level to 18 pursuant to Section 2L1.1(b)(1)(6) of the Sentencing Guidelines, which applies where "the offense involved intentionally or recklessly creating a substantial risk of death or serious bodily injury to another person." Granting a two-level reduction for acceptance of responsibility, the probation officer determined that Gonzalez's total offense level was 16, and that he was in criminal history category II, with a Guidelines range of 24 to 30 months of imprisonment.

At sentencing, the parties disagreed over application of the Section 2L1.1(b)(1)(6) enhancement. Gonzalez argued that the enhancement should not be applied because it was based on "accidental conduct," given that he inadvertently placed the Chrysler 300 in reverse, rather than park, before exiting the vehicle. He also contended that the facts of the case did not warrant a determination that a substantial risk of death or serious bodily injury had been created. The Government maintained that the enhancement should be applied but conceded that the Chrysler 300 had been traveling at "low speed."

The district court found that Gonzalez had decided to flee while he was still in the vehicle and then continued his flight on foot. The court determined that, instead of an enhancement under Section 2L1.1(b)(1)(6), it would apply a two-level enhancement for "reckless endangerment during

No. 20-40776

flight" under Section 3C1.2. The court determined that, after a 2-level reduction for acceptance of responsibility, Gonzalez's total offense level was 12, and that, given that Gonzalez was in criminal history category II, his Guidelines range was 12 to 18 months of imprisonment. The district court sentenced Gonzalez to 15 months of imprisonment, to be followed by a 3-year term of supervised release.

## DISCUSSION

Gonzalez argues that the district court committed procedural error in sentencing him. For such errors, we review the district court's interpretation and application of the Sentencing Guidelines *de novo* and its factual findings for clear error. *United States v. Serfass*, 684 F.3d 548, 550 (5th Cir. 2012).[1]

Our issue today is whether the district court erred in applying a two-level enhancement that is to be imposed "[i]f the defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer." U.S.S.G. § 3C1.2.

The defendant's conduct must be "at least reckless" to qualify for the Section 3C1.2 enhancement. *See* § 3C1.2 cmt. n.2. Section 3C1.2 incorporates the definition of "reckless" found in the commentary to Section 2A1.4 for involuntary manslaughter. *See id.* That section of commentary defines "reckless" as referring to "a situation in which the defendant was

---

[1] There is potential but perhaps minimal tension in our caselaw on the standard of review for our specific issue. Some of our opinions state that whether conduct constitutes reckless endangerment is a factual finding subject to clear error review. *See, e.g.*, *United States v. Gould*, 529 F.3d 274, 276 (5th Cir. 2008). Others state that whether undisputed facts constitute reckless endangerment is a legal question reviewed *de novo*. *See United States v. Garcia-Solis*, 927 F.3d 308, 312 (5th Cir. 2019). The enhancement was properly applied here under either standard of review.

aware of the risk created by his conduct and the risk was of such a nature and degree that to disregard that risk constituted a gross deviation from the standard of care that a reasonable person would exercise in such a situation." § 2A1.4 cmt. n.1. "Criminally negligent" conduct, on the other hand, is "conduct that involves a gross deviation from the standard of care that a reasonable person would exercise under the circumstances, but which is not reckless." *Id.* Thus, both standards require a "gross deviation" from reasonable conduct, one demanding a greater deviation than the other.

The defendant's conduct must also create a "substantial risk of death or serious bodily injury" to warrant application of the reckless endangerment enhancement. § 3C1.2. Importantly, the enhancement is warranted where there is a substantial *risk* of death or serious injury regardless of whether actual harm resulted. *United States v. Jimenez*, 323 F.3d 320, 323–24 (5th Cir. 2003). A "serious bodily injury" is one "involving extreme physical pain or the protracted impairment of a function of a bodily member, organ, or mental faculty; or requiring medical intervention such as surgery, hospitalization, or physical rehabilitation." § 1B1.1 cmt. n.1(M).

We now consider the relevant facts. Gonzalez hastily abandoned a moving vehicle without first placing it in park. Though the PSR quoted another passenger who said that Gonzalez did try to place the vehicle in park, he continued exiting the vehicle even though it did not stop. The vehicle was occupied by people who had committed a crime. A reasonable person in Gonzalez's position should expect that the others would also seek to escape.

In arguing that his conduct does not justify the enhancement, Gonzalez relies on various Fifth Circuit opinions. In one, we rejected application of the reckless endangerment enhancement where the sole justification for its application was that the defendant had fled from armed law enforcement. *United States v. Gould*, 529 F.3d 274, 277 (5th Cir. 2008).

5

We found no evidence that the defendant "heard the officers order him to stop or that he reacted in a threatening way or made any threatening actions toward the officers as he ran." *Id.* We contrasted those facts from a case with "evidence that the fleeing defendant led pursuing officers across four lanes of a busy interstate highway." *Id.* at 278.

Unlike in *Gould*, the justification for the enhancement here is more than the act of fleeing. The facts show that the manner in which Gonzalez fled — hastily abandoning a moving vehicle that was occupied — reflected a conscious disregard of a substantial risk of serious bodily injury.

Gonzalez's conduct is also distinguishable from a defendant's conduct in another of our precedents on which he relies, where we analyzed application of the reckless endangerment enhancement in Section 2L1.1(b)(6). *United States v. Rodriguez*, 630 F.3d 377, 378 (5th Cir. 2011).[2] There, the only facts supporting the enhancement were that the occupants were being transported in the cargo area of a sports utility vehicle and the driver made a U-turn across an interstate. *Id.* at 382–83. We concluded that the enhancement did not apply. *Id.* at 383.

We agree with the analysis in a recent Eleventh Circuit case and find it to be more comparable than the opinions Gonzalez identifies. *See United States v. Cotchery*, 834 F. App'x 555 (11th Cir. 2020). That court upheld application of the reckless endangerment enhancement in Section 3C1.2 of the Guidelines because, among other things, the defendant had led police on

---

[2] *Rodriguez* imposed the reckless endangerment enhancement in Section 2L1.1(b)(6), which applies "[i]f the offense involved intentionally or recklessly creating a substantial risk of death or serious bodily injury to another person." U.S.S.G. § 2L1.1(b)(6). The Guideline applied by the district court in this case, Section 3C1.2 ("Reckless Endangerment During Flight") contains language similar to Section 2L1.1(b)(6). Cases interpreting Section 2L1.1(b)(6) are helpful to interpret Section 3C1.2.

a short chase before fleeing from his vehicle while it was still moving. *Id.* at 556-58. The court acknowledged that "the 'car chase' only lasted a short distance and the car may not have been moving at a fast speed" but held that those facts did "not minimize the substantial risk of injury or death that a moving unoccupied vehicle posed to people and property in the residential area." *Id.*

The district court did not err in applying the two-level enhancement for reckless endangerment during flight.

AFFIRMED.