# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-10016

United States Court of Appeals
Fifth Circuit

**FILED**

March 19, 2015

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

MARCUS LEE HARRIS,

Defendant-Appellant

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:13-CR-8-1

Before JONES and HAYNES, Circuit Judges, and CRONE, District Judge.[*]

PER CURIAM:[**]

Appellant Harris challenges the trial court's failure to award him a 3-level guidelines reduction because he did not take enough steps in his "attempt" to steal additional credit card identities. U.S.S.G. § 2X1.1(b)(1). Finding no clear error, we AFFIRM the sentence.

Marcus Lee Harris pleaded guilty to one count of using a counterfeit access device in violation of 18 U.S.C. §§ 1029(a)(1) and (c)(1)(a)(i). At the time

---

[*] District Judge for the Eastern District of Texas, sitting by designation.

[**] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 14-10016

he was apprehended, Harris was in possession of 15 counterfeit credit cards. The investigation subsequently revealed that Harris had used 42 counterfeit credit cards in a scheme to purchase diesel fuel. To commit fraud, Harris obtained debit or gift cards and decoded the original numbers from them. He then obtained valid credit card numbers and coded the numbers onto the prepaid debit or gift cards. He embossed his name onto some of the counterfeit cards. At sentencing, Harris and the Government agreed to a guilty plea without an agreement.[1]

The presentence report ("PSR") assigned Harris a base offense level of 6 pursuant to U.S.S.G. § 2B1.1(a)(2). Harris's total offense level of 21 and criminal history category VI resulted in a guidelines sentencing range of 77 to 96 months in prison and a 1 to 3 year term of supervised release.[2]

After further investigation, two addenda were added to the PSR. The second addendum alleged that an examination of Harris's phone revealed that Harris had possessed 131 additional credit card numbers. In addition, Harris's phone contained images of money transfer receipts to Vietnam, China, and Ghana, images of international money orders, screen shots of conversations regarding "dumps," a term used to describe the sale of stolen credit card numbers, text messages regarding the use of credit card numbers to purchase diesel fuel, and text messages referencing an "ICQ" profile.[3] Investigators

---

[1] The sentencing transcript begins with an explanation by the Federal Public Defender for Harris as to why Harris chose to withdraw from the plea agreement, and the government consented. Thereupon, the court conducted a mini Rule 11 colloquy because Harris still wished to proceed with sentencing.

[2] The PSR calculated the amount of intended loss based on the credit limits of the stolen credit card numbers. At sentencing, the district court rejected the amount of intended loss set forth in the PSR.

[3] According to the PSR, ICQ is an instant messaging service often used to obtain stolen credit card information.

2

found no evidence that Harris had fraudulently used the credit card numbers found in his phone.

At sentencing, the district court determined for sentencing purposes that the amount of intended loss was $103,800. The court found that Harris had 42 cards in his possession and 131 additional numbers in his phone, and he used or had intended to use each card or number six times to charge $100 each time. Harris then argued that he should receive a three-level reduction pursuant to U.S.S.G. § 2X1.1(b)(1) because he had not completed any offense as to the 131 credit card numbers that he had possessed but not used.

The district court rejected Harris's argument and found a total offense level of 17 and a guidelines range of 51 to 63 months. The district court sentenced Harris to 54 months in prison, three years of supervised release, and restitution of the actual loss of $9,812.92. Harris objected to the sentence and timely filed notice of appeal.

On appeal, this court reviews the district court's application of the Federal Sentencing Guidelines *de novo* and its associated findings of fact for clear error. *U.S. v. Waskom*, 179 F.3d 303 (1999). "There is no clear error if the district court's finding is plausible in light of the record as a whole." *United States v. Cisneros-Gutierrez*, 517 F.3d 751, 764 (5th Cir. 2008).

Harris argues that a three-level reduction applies to his base offense level because note 18 of the commentary to § 2B1.1 of the Sentencing Guidelines, provides that "[in] the case of a partially completed offense (*e.g.*, an offense involving a completed theft or fraud) the attempt level is to be determined in accordance with the provisions of § 2X1.1." § 2B1.1 cmt. n.18. Under § 2X1.1, if part of the offense is an attempt, the defendant's sentencing level should be "[decreased] by 3 levels, unless the defendant completed all the acts the defendant believed necessary for successful completion of the substantive offense or the circumstances demonstrated that the defendant was

about to complete all acts but for apprehension or interruption by some similar event beyond the defendant's control." § 2X1.1(b)(1).

Whether the three-level reduction contained in § 2X1.1 is warranted "necessarily requires a fact-specific inquiry." *Waskom*, 179 F.3d at 308. Moreover, the application of § 2X1.1 "resists a precise standard" because of the guideline's focus on the defendant's conduct in relation to the object offense. *Id.*

In *Waskom*, this court laid out five non-exhaustive considerations to determine whether a reduction under § 2X1.1 is appropriate. *Waskom*, 179 F.3d at 308–09. Following an amendment to the Guidelines, four of the *Waskom* considerations remain relevant: "(1) a focus on the substantive offense and the defendant's conduct in relation to that specific offense; (2) [§ 2X1.1] does not require the reduction for a [defendant] who has made substantial progress in his criminal endeavor simply because a significant step remains before the substantive offense become inevitable; (3) the circumstances must demonstrate that the balance of the significant acts completed and those remaining tips toward completion of the substantive offense, which requires that the district court consider the quality of the completed and remaining acts, not simply the relative quantities of each; and (4) a sentencing court should consider the temporal frame of the scheme and the amount of time the defendant would have needed to finish his plan, had he not been interrupted." *U.S. v. John*, 597 F.3d 263, 283 (5th Cir. 2010) (quoting *Waskom*, 179 F.3d at 308–09) (internal quotation marks omitted).

In the present case, the uncontested PSR established that Harris not only possessed 131 credit card numbers, but also possessed text messages referencing "dumps," the sale of diesel fuel, and an ICQ profile, suggesting that Harris had completed significant steps in the completion of his scheme to purchase diesel fuel with the stolen credit card numbers. Moreover, Harris

No. 14-10016

fraudulently used 42 counterfeit credit cards, and used each several times, over the course of less than a month. This brief time frame suggests that Harris was able to quickly encode the card numbers onto the prepaid debit and gift cards. In light of the record as a whole, the district court found plausibly that Harris was about to complete all acts necessary for the completion of the crime but for his apprehension. Accordingly, the court did not commit clear error in finding that the three-level reduction contained in § 2X1.1 does not apply to Harris's base offense level. The sentence imposed by the district court is **AFFIRMED**.