# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-40478

United States Court of Appeals
Fifth Circuit

**FILED**
April 7, 2016

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

      Plaintiff – Appellee,

v.

REYNALDO SOTO,

      Defendant – Appellant.

Appeal from the United States District Court
for the Southern District of Texas

Before DENNIS, ELROD, and GRAVES, Circuit Judges.

PER CURIAM:

Reynaldo Soto appeals his sentence for unlawful possession of ammunition by a felon. Soto argues that in determining his Sentencing Guidelines range, the district court incorrectly determined that when Soto was arrested, he was on the verge of delivering the ammunition to a co-conspirator who would smuggle it across the border into Mexico, and therefore erroneously applied the cross reference in U.S.S.G. § 2K2.1(c)(1)(A) without giving Soto a three-level attempt reduction under § 2X1.1(b)(1). Because the cross reference is inapplicable, we VACATE Soto's sentence and REMAND for resentencing.

No. 15-40478

**I.**

Reynaldo Soto pleaded guilty to being a felon in possession of ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Soto, a convicted felon, was pulled over for a traffic violation in Pharr, Texas.[1] During the traffic stop, Soto stated that he and his one-year-old son, who was in the car, were on their way home from Soto's mother's residence. The police officer detected the smell of marijuana and Soto consented to a search of the car. A drug-sniffing dog alerted to the presence of a narcotic in the ashtray, but no narcotics were located. However, the officer discovered twenty-three boxes (460 rounds) of 7.62 x 39mm ammunition in the trunk of the car. This type of ammunition is standard ammunition for AK-47 assault rifles.

Soto initially denied ownership of the ammunition, but after being taken into custody, he stated that he had purchased the ammunition for deer hunting and that he intended to rent a firearm from the owner of the ranch where he would hunt. During a subsequent interview, Soto recanted his initial story and stated that he had purchased the ammunition for someone named "Compadre," whom he met through a prison friend. Soto stated that Compadre was from Mexico but lived in Texas, that Compadre had provided the money to buy the ammunition, and that the ammunition was destined for Mexico. Soto stated that he knew Compadre paid people to buy firearms and ammunition which were then smuggled illegally into Mexico, and he admitted that this was the second time he had purchased ammunition for Compadre.

The Presentence Investigation Report (PSR) assigned Soto a base offense level of 20 and a four-level enhancement because Soto possessed the ammunition "with knowledge, intent, or reason to believe that it would be

---

[1] Pharr is located in Hidalgo County, bordering McAllen, and is connected by bridge to Reynosa, Mexico.

2

transported out of the United States," resulting in an offense level of 24. U.S.S.G. § 2K2.1(b)(6)(A).[2]   However, because Soto possessed the ammunition in connection with another offense, namely, attempted exportation of ammunition without an export license, the PSR applied the cross reference in U.S.S.G. § 2K2.1(c)(1)(A), which directs the use of § 2X1.1 if the resulting offense level is greater than previously determined.  Because the offense level for exportation is 26, the PSR determined that the adjusted offense level was 26, and that the total offense level was 24 after a two-level adjustment for acceptance of responsibility.   The only reference in the PSR to Soto's destination at the time of his arrest is Soto's statement that he was on his way home from his mother's house.  The PSR did not state that Soto was en route to deliver the ammunition when he was stopped, nor did it state when Soto planned to deliver the ammunition to Compadre, or even that a delivery had been arranged.

In his written objections to the PSR, Soto challenged the application of the cross reference, arguing that he was entitled to a three-level attempt reduction under § 2X1.1(b)(1), which would bring the adjusted offense level for the exportation offense to 23 and thus render the cross reference inapplicable because it does not produce a greater offense level than § 2K2.1(b)(6)(A).  Soto argued that the exception to the three-level attempt reduction does not apply because "there is no evidence that [Soto] or anyone else had completed all the acts necessary to [illegally export the ammunition] . . . nor was there evidence that that offense had been stymied by external events.  Certainly, Mr. Soto's own conduct fell well short of that completed offense.  He did nothing more than purchase ammunition."

---

[2] All references in this opinion are to the 2014 version of the Sentencing Guidelines, under which Soto was sentenced.

No. 15-40478

In the addendum to the PSR, the probation officer responded to Soto's objection, stating that the cross reference applied because Soto had purchased the ammunition with the knowledge, intent, or reason to believe that it would be illegally exported to Mexico, and "only needed to transfer the ammunition to co-conspirator(s). However, he was arrested prior to the illegal transfer and eventual illicit smuggle into Mexico." The addendum to the PSR did not state that Soto was on his way to deliver the ammunition to Compadre when he was arrested and did not mention any plan for delivery of the ammunition on the day of Soto's arrest or at any other time.

Soto reurged his objection to the cross reference at sentencing. The district court overruled the objection, stating that Soto "was in route to turn the ammunition over to somebody who would actually be the courier into Mexico" and that the ammunition would have made it to Mexico but for law enforcement intervention. The district court adopted the PSR and, after granting an additional point for acceptance of responsibility, sentenced Soto to 96 months' imprisonment and three years of supervised release. Soto timely appealed his sentence, challenging the application of the cross reference to him.

**II.**

"We review a district court's interpretation of the sentencing guidelines de novo and its factual findings for clear error." *United States v. Griffith*, 522 F.3d 607, 611 (5th Cir. 2008). "The district court's statement that [a defendant] had completed all acts believed necessary for completion of the offense is a factfinding, which we review for clear error." *United States v. Knox*, 112 F.3d 802, 813 (5th Cir.), *vacated in part on other grounds and reinstated*, 120 F.3d 42 (5th Cir. 1997).

Although we review Guidelines sentencing errors for harmless error, the government has not argued that any error was harmless, nor could it meet its

burden to do so in this instance. *See United States v. Ibarra-Luna*, 628 F.3d 712, 714 (5th Cir. 2010) (proponent of sentence has burden to "convincingly demonstrate[] both (1) that the district court would have imposed the same sentence had it not made the error, and (2) that it would have done so for the same reasons it gave at the prior sentencing").

## III.

Soto argues that the district court erred in applying the cross reference provision in Section 2K2.1(c)(1)(A) because there was no evidence that Soto had completed or was about to complete all acts required to export the ammunition to Mexico. Before considering his argument, we first review the relevant provisions of the Sentencing Guidelines.

Section 2K2.1 establishes a base offense level of 20 for unlawful possession of ammunition by a felon convicted of a violent felony and applies a four-level enhancement where the defendant "possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be transported out of the United States." U.S.S.G. § 2K2.1(a)(4)(A), (b)(6)(A). Section 2K2.1(c) contains a "cross reference" provision allowing for a greater offense level:

(c) Cross Reference

(1) If the defendant used or possessed any firearm or ammunition cited in the offense of conviction in connection with the commission or attempted commission of another offense, or possessed or transferred a firearm or ammunition cited in the offense of conviction with knowledge or intent that it would be used or possessed in connection with another offense, apply—

(A) § 2X1.1 (Attempt, Solicitation, or Conspiracy) in respect to that other offense, if the resulting offense level is greater than that determined above[.]

5

U.S.S.G. § 2K2.1(c).    This cross reference provision applies where the ammunition "facilitated, or had the potential of facilitating," another offense. U.S.S.G. § 2K2.1 cmt. n.14(A).

Section 2X1.1, in turn, provides in relevant part:

(a) Base Offense Level: The base offense level from the guideline for the substantive offense, plus any adjustments from such guideline for any intended offense conduct that can be established with reasonable certainty.

(b) Specific Offense Characteristics

(1) If an attempt, decrease by 3 levels, unless the defendant completed all the acts the defendant believed necessary for successful completion of the substantive offense or the circumstances demonstrate that the defendant was about to complete all such acts but for apprehension or interruption by some similar event beyond the defendant's control.

U.S.S.G. § 2X1.1;[3] *see also id.* § 2X1.1 cmt. background (explaining that no reduction of the offense level is warranted where "the substantive offense was substantially completed or was interrupted or prevented on the verge of completion by the intercession of law enforcement authorities or the victim," but when "the arrest occurs well before the defendant or any co-conspirator has completed the acts necessary for the substantive offense . . . a reduction of 3 levels is provided under § 2X1.1(b)(1) or (2)").

---

[3] Section 2X1.1(b)(2) contains a provision for conspiracies that parallels the attempt provision in § 2X1.1(b)(1).  The government at oral argument argued for the first time that the probation officer and the district court actually found that Soto's activity constituted a conspiracy, not an attempt.  The government points to a single reference to § 2X1.1(b)(2) in the probation officer's written response to Soto's objections to the PSR.  However, the PSR itself, Soto's written objections and his argument at sentencing, and the district court's statements at sentencing all refer generally to § 2X1.1(b) and could apply equally to its nearly identical subsections for conspiracies and attempts.  Indeed, the government conceded at argument that the district court's statement covers both conspiracy and attempt.  Because both parties have briefed the issues before us exclusively in terms of attempt, not conspiracy, and because the difference is immaterial to the outcome in this case, we address only the attempt subsection.

No. 15-40478

In *United States v. Waskom*, we explained that determining whether a three-level reduction under § 2X1.1(b) is warranted requires a fact-specific inquiry that "resists a precise standard." 179 F.3d 303, 308 (5th Cir. 1999).[4] However, we identified four non-exhaustive considerations that guide a court's application of the guideline:

> First, the § 2X1.1(b)(2) inquiry focuses on the substantive offense and the defendant's conduct in relation to that specific offense. Second, § 2X1.1(b)(2) does not require the reduction for a conspirator who has made substantial progress in his criminal endeavor simply because a significant step remains before commission of the substantive offense becomes inevitable. Third, in order to support a denial of the reduction under § 2X1.1(b)(2), the circumstances must demonstrate that the balance of the significant acts completed and those remaining tips toward completion of the substantive offense. This requires that the district court consider the quality of the completed and remaining acts, not simply the relative quantities of each. Fourth, a sentencing court should consider the temporal frame of the scheme and the amount of time the defendant would have needed to finish his plan, had he not been interrupted. As the completion of the offense becomes more imminent, the reduction will become less appropriate.

*Id.* at 308 (citations omitted).[5]

The PSR, which was adopted by the district court, stated that because Soto admitted that the ammunition was destined for Mexico, he had the knowledge or intent that it would be used or possessed in connection with another offense, namely, exportation of ammunition to Mexico without the

---

[4] *Waskom* discussed a reduction under § 2X1.1(b)(2), involving conspiracies, but its standard is equally relevant to the parallel provision in § 2X1.1(b)(1) involving attempts. *See United States v. Harris*, 598 F. App'x 288, 290 (5th Cir.) (applying *Waskom*'s considerations to attempt reduction under § 2X1.1(b)(1)), *cert. denied*, 136 S. Ct. 139 (2015).

[5] *Waskom* identified a fifth consideration, which involved the conspirators' subjective belief as to what was necessary for completion of the offense. As we have noted, the Guidelines were amended after our decision in *Waskom*, removing this consideration, but the other four considerations set forth in *Waskom* remain pertinent. *See United States v. John*, 597 F.3d 263, 283 (5th Cir. 2010).

required export license.  That offense has a base offense level of 26 pursuant to U.S.S.G. § 2M5.2(a)(1).  Because the PSR did not reduce that level by three under § 2X1.1(b), the offense level for the exportation offense exceeded the adjusted offense level under § 2K2.1(b)(6)(A), and the PSR applied the cross reference.  If, as Soto argues, he was entitled to the three-level reduction in § 2X1.1(b)(1), then the cross reference offense level—reduced to 23—was not greater than the offense level under § 2K2.1, rendering the cross reference inapplicable.

The addendum to the PSR stated that the three-level reduction did not apply because "[t]he defendant purchased the ammunition and only needed to transfer the ammunition to fellow co-conspirator(s).  However, he was arrested prior to the illegal transfer and eventual illicit smuggle into Mexico."  The PSR and its addendum did not state that Soto had made arrangements for delivery of the ammunition to Compadre or that he was on his way to do so when he was arrested; indeed, these documents were silent as to the "temporal frame of the scheme."  *Waskom*, 179 F.3d at 308.

Soto argued at sentencing that he did not complete all of the acts necessary for completion of the substantive offense and there was no evidence that he was about to complete those actions but for his apprehension by law enforcement.  The district court disagreed:

> I mean, I just don't agree with you factually that this would not have occurred even if there had not been this apprehension.  I mean, it would've -- these rounds of ammunition, which I believe were for assault rifles, were destined for Mexico and would have ended up there but for law enforcement intervening.
>
> . . .
>
> Alright, I just don't agree with you factually.  I believe that all the evidence suggests that it was on his was -- that he was in route to turn the ammunition over to somebody who would actually be the courier into Mexico and but for law enforcement interdiction, it

didn't make its way into Mexico.  Alright, your objection's noted
but again, I just overrule it because I disagree with your factual
premise.

It is undisputed that neither Soto nor anyone else actually completed all the
acts necessary to commit the offense of illegally exporting the ammunition to
Mexico.  Accordingly, whether the district court correctly applied the cross
reference depends on the correctness of its determination that Soto was "in
route" to deliver the ammunition to someone who would transport it to Mexico
when he was arrested.[6]  *See* U.S.S.G. § 2X1.1(b)(1).

Soto argues that there is no evidence to support the district court's
finding that he was on the verge of delivering the ammunition to Compadre.
We agree.  The PSR did not address the timing of the expected delivery or even
whether any delivery had been arranged.  The government concedes that Soto
bought the ammunition three days before he was stopped, and points to no
evidence that Soto had arranged to meet with Compadre on the day of his
arrest or even that any arrangements whatsoever had been made for delivering
the ammunition.  Indeed, the government conceded at oral argument that
there is no evidence in the record as to when Soto planned to deliver the
ammunition.  Nor is there any evidence controverting Soto's statement that he
was on his way home from his mother's house when he was stopped.  At oral
argument, the government contended that the court can infer that he was on

---

[6] To the extent that the district court's statement that the ammunition was "destined
for Mexico and would have ended up there but for law enforcement intervening" suggests
that Soto was ineligible for the three-level reduction simply because the ammunition would
have ended up in Mexico eventually but for police intervention, that understanding overlooks
our admonition that "a sentencing court should consider the temporal frame of the scheme
and the amount of time the defendant would have needed to finish his plan, had he not been
interrupted." *Waskom*, 179 F.3d at 308; *see also id.* at 312 ("Although the district court may
very well have been correct that the defendants *eventually* would have secured the materials
they needed to construct the explosive devices, the relevant question is whether they were
*about* to do so.").  However, the district court went on to state its belief that Soto was "in
route" to deliver the ammunition.

his way to meet Compadre because Compadre lived in a nearby town, but this proximity argument is unavailing because Soto lived in Pharr itself, where he was stopped. The fact that Soto had once before delivered ammunition to Compadre, absent evidence of the circumstances of that transaction, reveals nothing about the expected timing of the delivery. In sum, there is no evidence whatsoever in the record that Soto was en route to deliver the ammunition to Compadre when he was pulled over.

The government nevertheless argues that the district court did not err because purchasing the ammunition was the most significant step in exporting the ammunition and the only remaining step for Soto was to give the ammunition to Compadre. *See Waskom*, 179 F.3d at 308. In the cases upon which the government relies, however, defendants who were held ineligible for a reduction under § 2X1.1(b) had done far more than Soto towards completing their offenses. In *United States v. Avila-Ortiz*, the court upheld denial of the reduction where the defendant had taken "many significant steps" and made "substantial progress" towards completing a bulk cash smuggling offense, noting that when the defendant was arrested "the only step left was for him to take his unreported cash across the border." 415 F. App'x 524, 525 (5th Cir. 2011). In *United States v. Harris*, the court determined that "[i]n light of the record as a whole, the district court found plausibly that Harris was about to complete all acts necessary for the completion of the crime [of using counterfeit credit cards] but for his apprehension" where he "not only possessed 131 credit card numbers, but also possessed text messages referencing 'dumps,' the sale of diesel fuel, and an ICQ profile," and had "fraudulently used 42 counterfeit credit cards, and used each several times, over the course of less than a month." 598 F. App'x 288, 290–91 (5th Cir.), *cert. denied*, 136 S. Ct. 139 (2015).

Here, in contrast, based on the evidence in the record, all Soto had done was buy ammunition and put it in his car. In *United States v. John*, the

defendant had done far more than Soto and was still entitled to the three-level reduction.[7]  597 F.3d 263 (5th Cir. 2010).  John stole customer information from seventy-six accounts, provided the information to her co-conspirator, and used the stolen information to incur fraudulent charges on four of the accounts. *Id.* at 269.  We nevertheless held that the district court had clearly erred in failing to apply the three-level reduction under § 2X1.1(b)(2) because the acts necessary to complete the intended offense had not occurred at the time of John's arrest. *Id.* at 283–84.  We noted that in order to complete the scheme, someone had to call Citigroup, request a change of a mailing address for a particular stolen account, and then have a confederate added as an authorized user so that the account could be accessed. *Id.* at 284.  Because this process had not been completed for most of the accounts, we determined that the intended offense had only been partially completed and thus the reduction applied. *Id.* at 284.  We vacated John's sentence after determining that all four prongs of plain error review had been satisfied. *Id.* at 289.  *See also Waskom*, 179 F.3d at 312 ("Although the district court may very well have been correct that the defendants *eventually* would have secured the materials they needed to construct the explosive devices, the relevant question is whether they were *about* to do so. . . .  In sum, the record does not support a finding that, at the point of their arrests, the defendants were on the verge of completing the acts they believed necessary to commit the substantive offense of robbing the armored car.  We therefore find that the district court clearly erred in denying the three-level reduction under § 2X1.1(b)(2)."); *United States v. McCrumby*, 402 F. App'x 961, 963 (5th Cir. 2010) (holding that district court clearly erred in failing to apply the three-level reduction under § 2X1.1(b)(2) where "the acts

---

[7] *John*, like *Waskom*, discussed a reduction under § 2X1.1(b)(2).

to complete the intended offense . . . had not been completed at the time McCrumby was apprehended").

Applying our precedent, on this record Soto was entitled to the three-level reduction under § 2X1.1(b)(1).  No evidence before the district court supported its finding that Soto was en route to deliver the ammunition for smuggling to Mexico when he was arrested.  Accordingly, that finding was clearly erroneous.  After the three-level reduction, the offense level under § 2X1.1 for attempted exportation of ammunition is not greater than the offense level under § 2K2.1 for being a felon in possession of ammunition, and the district court therefore erred in applying the cross reference in § 2K2.1(c)(1)(A).[8]

## IV.

For the foregoing reasons, we VACATE Soto's sentence and REMAND for resentencing.

---

[8] In its brief, the government argued in the alternative that the district court was not required to consider the three-level reduction under § 2X1.1(b)(1) because the cross reference provision in § 2X1.1(c)(1) instructs that "[w]hen an attempt, solicitation, or conspiracy is expressly covered by another offense guideline section, [the court should] apply that guideline section," and, according to the government, § 2M5.2 covers attempts to export ammunition. The government effectively abandoned this argument at oral argument, stating that it was "inapplicable."  Even assuming, *arguendo*, that this argument was not abandoned by the government, the argument fails because § 2M5.2 does not "expressly cover[]" attempts.  It does not mention attempts and is not listed among the dozens of offense guidelines that are identified in the Application Notes as expressly covering offenses. *See* U.S.S.G. § 2X1.1 cmt. n.1; *cf. United States v. Ogle*, 328 F.3d 182, 191 (5th Cir. 2003) (rejecting analogous argument that a substantive offense guideline rendered § 2X1.1(b) inapplicable where the substantive offense provision contained "no reference whatsoever to either attempts or conspiracies"). Although we held in two unpublished opinions that a district court's contrary conclusion was not reversible plain error, *United States v. Caballero*, 544 F. App'x 395, 397 (5th Cir. 2013); *United States v. Oyervides*, 546 F. App'x 362, 365 (5th Cir. 2013), plain error does not apply here. *Caballero* and *Oyervides* did not decide the correct interpretation of §§ 2X1.1(c)(1) and 2M5.2, and, in any event, they are not binding authority.