## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 19-40161

United States Court of Appeals
Fifth Circuit

**FILED**
March 16, 2020

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

RODOLFO RODRIGUEZ-LEOS,

Defendant - Appellant

Appeals from the United States District Court
for the Southern District of Texas

Before DENNIS, GRAVES, and WILLETT, Circuit Judges.

JAMES L. DENNIS, Circuit Judge:

Rodolfo Rodriguez-Leos appeals his sentence for unlawful possession of ammunition by a person admitted to the United States under a nonimmigrant visa. Rodriguez-Leos argues that he is entitled to a three-level reduction for attempt under U.S.S.G. § 2X1.1(b)(1) because when he was arrested, he was not about to complete all the acts necessary for the separate offense of exportation of ammunition. We agree and accordingly VACATE Rodriguez-Leos's sentence and REMAND for resentencing.

## I.

Rodriguez-Leos pleaded guilty to unlawful possession of ammunition, in and affecting interstate and foreign commerce, by a person admitted to the

No. 19-40161

United States under a nonimmigrant visa.  According to the presentence report (PSR), federal agents conducting surveillance operations at the Academy Sports and Outdoors store in McAllen, Texas, observed Rodriguez-Leos purchase a case containing 520 rounds of 7.62 x 39mm caliber Monarch ammunition and leave the store.  A record check of the vehicle driven by Rodriguez-Leos revealed that he entered the country at the Hidalgo Port of Entry earlier that same day.  Agents followed Rodriguez-Leos after he left Academy and drove to a residence in McAllen.  Rodriguez-Leos got out of his vehicle with the box of ammunition, walked toward the front of the home out of sight of the agents, and returned to his vehicle shortly thereafter without the box.  Rodriguez-Leos left, and a surveillance unit followed, while other agents stayed behind to speak with the homeowner, who consented to a search.  Agents discovered and seized the box of ammunition concealed underneath a bush near the front entrance of the home.

The surveillance unit followed Rodriguez-Leos to a used auto parts store in nearby Hidalgo, Texas.  There, the agents made contact with Rodriguez-Leos and questioned him regarding the ammunition.  After waiving his *Miranda* rights, Rodriguez-Leos admitted that he had purchased the ammunition for an individual named "El Chivo" and had left the ammunition at the residence in McAllen because he did not want to have the ammunition in his vehicle.  He also acknowledged that he had purchased ammunition for El Chivo twice during the previous month and received $50 each time.  With respect to the two prior occasions, Rodriguez-Leos told the agents that he met El Chivo at the port of entry and received money to purchase ammunition, and Rodriguez-Leos then purchased the ammunition.  On the day of or the day after each purchase, El Chivo called Rodriguez-Leos and instructed him to meet an unidentified individual who drove a Dodge Caliber at the Whataburger restaurant in Hidalgo.  Rodriguez-Leos went to Whataburger and gave the

2

ammunition to the unknown male.  At some point later, according to Rodriguez-Leos, he understood that the male would smuggle, or recruit someone else to smuggle, the ammunition into Mexico.

The PSR assigned Rodriguez-Leos a base offense level of 14 and a four-level enhancement because Rodriguez-Leos possessed the ammunition "with knowledge, intent, or reason to believe that it would be transported out of the United States," resulting in an offense level of 18.  U.S.S.G. § 2K2.1(b)(6)(A).  However, because Rodriguez-Leos possessed the ammunition in connection with another offense—namely, the exportation of ammunition without a valid export license—the PSR applied the cross reference in § 2K2.1(c)(1), which directs the use of § 2X1.1 if the resulting offense level is greater than previously determined.  This resulted in a base offense level of 26.  §§ 2M5.2(a)(1), 2X1.1(a).

The Guidelines state that a three-level reduction under § 2X1.1(b)(1) is warranted where the defendant attempted but did not complete the substantive offense "unless the defendant completed all the acts the defendant believed necessary for successful completion of the substantive offense or the circumstances demonstrate that the defendant was about to complete all such acts but for apprehension or interruption by some similar event beyond the defendant's control."  § 2X1.1(b)(1).  The PSR stated the decrease was not warranted because Rodriguez-Leos "completed all the acts necessary and, but for the apprehension, was able to complete all the acts."

Rodriguez-Leos objected in writing to the PSR, arguing primarily that he did not know that El Chivo was involved in organized crime or that the ammunition would be smuggled into Mexico.  Because he did not know the ammunition would be used in connection with another felony offense, Rodriguez-Leos argued, he should not have received a four-level increase under § 2K2.1(b)(6), and the cross-reference provision should not have been utilized.

No. 19-40161

Rodriguez-Leos also argued that "[t]here is no evidence that [he] attempted exportation of the ammunition," and "[i]t can't be said that [he] completed all necessary acts under [§] 2X1.1(a)." Finally, Rodriguez-Leos asserted that he was entitled to a two-level minor role reduction, and an additional two-level reduction for acceptance of responsibility. § 3B1.2(b) (minor role); § 3E1.1(a) (acceptance of responsibility).

At the sentencing hearing, the district court applied a three-level reduction for acceptance of responsibility; with a new total offense level of 23, Rodriguez's guidelines range became 46 to 57 months. The district court then addressed the evidence as it pertained to Rodriguez's knowledge that the ammunition was going to Mexico. After reviewing interview transcripts and hearing from counsel, the court overruled Rodriguez's objection, stating it was "clear" from the transcripts of Rodriguez's interviews with agents that he knew the ammunition he possessed was going to be smuggled to Mexico. The district court did not explicitly address Rodriguez's objections to (1) the application of the cross-reference, (2) the minor participant objection; or (3) the three-level decrease based on Rodriguez-Leos not "complet[ing] all necessary acts under [§] 2X1.1(a)." The court implicitly overruled these objections, however, by adopting the PSR with one change concerning acceptance of responsibility. The court sentenced Rodriguez-Leos within the guidelines range to 50 months in prison; no term of supervised release was ordered. Rodriguez-Leos timely filed a notice of appeal.

## II.

In his sole issue on appeal, Rodriguez-Leos asserts that the district court erred by failing to assign him a three-level reduction for attempt under § 2X1.1(b)(1) because there was no evidence that, before his arrest, he completed or was actually about to complete all the acts that he believed were

4

No. 19-40161

necessary for the successful completion of the substantive exportation-of-ammunition offense.

## A.

Before we reach the merits, we must determine our standard of review. We typically review the district court's interpretation of the Guidelines de novo and its factual findings for clear error. *See United States v. Soto*, 819 F.3d 213, 216 (5th Cir. 2016). However, if an appellant raises an objection for the first time on appeal or raises an objection that is different from the one he raised in the district court, review is limited to plain error. *United States v. Rodriguez*, 15 F.3d 408, 414-15 (5th Cir.1994); *United States v. Medina-Anicacio*, 325 F.3d 638, 643 (5th Cir. 2003).

"There is no bright-line rule for determining whether a matter was raised below." *United States v. Soza*, 874 F.3d 884, 889 (5th Cir. 2017) (quoting *United States v. Brown*, 561 F.3d 420, 435 n.12 (5th Cir. 2009)) (cleaned up). "If a party wishes to preserve an argument for appeal, the party must press and not merely intimate the argument during the proceedings before the district court." *Id.* (quoting *Dallas Gas Partners v. Prospect Energy Corp.*, 733 F.3d 148, 157 (5th Cir. 2013)) (alteration omitted). The objection must be "sufficiently specific to alert the district court to the nature of the alleged error and to provide an opportunity for correction." *United States v. Neal*, 578 F.3d 270, 272 (5th Cir. 2009); *see also United States v. Hernandez-Montes*, 831 F.3d 284, 290 (5th Cir. 2015) ("Key is whether the objection is specific enough to allow the court to take evidence and receive argument on the issue."). "[T]he objection and argument on appeal need not be identical; the objection need only 'give the district court the opportunity to address' the gravamen of the argument presented on appeal." *United States v. Nesmith*, 866 F.3d 677, 679 (5th Cir. 2017) (alteration and internal quotation marks omitted) (quoting *United States v. Garcia-Perez*, 779 F.3d 278, 281-82 (5th Cir. 2015), *overruled*

No. 19-40161

*on other grounds by United States v. Reyes-Contreras*, 910 F.3d 169 (5th Cir. 2018)).

The Government argues that Rodriguez-Leos's written objection to the PSR arguing that "[t]here is no evidence that [he] attempted exportation of the ammunition," and "[i]t can't be said that [he] completed all necessary acts under [§] 2X1.1(a)"[1] was insufficient to preserve his argument on appeal. We disagree.

---

[1] Paragraph 21 of the PSR stated, in full:

In this case, the defendant entered into an agreement with "El Chivo," an individual associated with organized crime, to purchase ammunition in exchange for financial compensation with the knowledge that the ammunition would be smuggled into Mexico. In the instant case, the defendant purchased 520 rounds of ammunition used for AK style assault rifles. Additionally, there is no record that anyone involved secured a license to export the ammunition to Mexico. Thus, the possession of ammunition would have the potential to facilitate the felony offense of exportation of ammunition without a required validated export license. Based on the defendant's involvement in the attempted exportation of ammunition without a required validated export license, the base offense level for the offense is 26, pursuant to U.S.S.G. § 2M5.2(a)(1). It should be noted that there is no Specific Offense Characteristic enhancement under U.S.S.G. § 2M5.2. The resulting offense level pursuant to U.S.S.G. § 2M5.2 is 26, which is greater than the above determined offense level of 18, pursuant to U.S.S.G. § 2K2.1. Therefore, the resulting offense level pursuant to U.S.S.G. § 2X1.1(a), is 26. *Pursuant, to U.S.S.G. § 2X1.1(b)(1), a decrease is not warranted as the defendant completed all the acts necessary and, but for the apprehension, was able to complete all the acts.*

(emphasis added). In Rodriguez's written objections, he stated in section 3 of 7:

Defendant objects page 7, paragraph 21 in that the agreement had nothing to do with the criminal organization or if "EL CHIVO" was involved with said criminal organization or associated with said organization. *There is no evidence that defendant attempted exportation of the ammunition it don't matter if without or with a valid export license. It can't be said that defendant completed all necessary acts under U.S.S.G. 2X1.1 (a).* Apprehension or no apprehension there is zero evidence to indicate that defendant did it with knowledge or intent that the ammunition was going to Mexico. We would have to make evidences up to come to that conclusion or make up a theory to support a 4 level increase. A base level of 26 is not a warranted and therefore the base level should be 14.

(emphasis added).

No. 19-40161

We first note that while Rodriguez-Leos cited the proper section of the Guidelines—U.S.S.G. § 2X1.1—he cited subsection (a), whereas subsection (b) is the subsection that is central to his argument.  Subsection (b) instructs that a three-level decrease for attempt applies "unless the defendant completed all the acts the defendant believed necessary for successful completion of the substantive offense," while subsection (a) simply instructs that the base offense level is determined by reference to the substantive offense.  In quoting the language from § 2X1.1(b) while citing § 2X1.1(a), Rodriguez-Leos addressed the proper subsection in substance, but not in name.

We have previously held that an objection was preserved where the defendant lodged a written objection and "did not specifically cite to the USSG section which the PSR applied," but used terminology identical to that used in the portion of the Guidelines the defendant was challenging.  *United States v. Ocana*, 204 F.3d 585, 589, 589 n.2 (5th Cir. 2000) (defendant's written objection "that the information in the [PSR] is not relevant conduct" sufficiently notified district court that defendant was objecting to base-level adjustment for her role in the offense).  Similarly, in *United States v. Neal*, we concluded that an error was preserved where the defendant stated in writing that he "object[ed] to the Probation Office's finding that, pursuant to U.S.S.G. § 4B1.4(A), defendant should be considered an armed career criminal in that he used or possessed a firearm or ammunition in connection with a crime of violence or controlled substance offense as defined in U.S.S.G. § 4B1.2(a)."  578 F.3d at 272.  On appeal, the defendant argued that "simple possession of drugs is not a 'controlled substance offense' for purposes of the Guidelines enhancements in § 4B1.4(b)(3) & (c)(2)," which he "never specifically alleged" in the district court.  *Id.*  Moreover, the district court construed defendant's objection as a factual one, "objecting solely to the *proximity* of the drugs," not a legal objection as to whether the simple possession of drugs was a controlled substance offense as

7

defined by the Guidelines. *Id.* The defendant did not clarify the basis of his objection after the district court's initial response. *Id.* Still, we concluded that "[w]hile Neal could certainly have been more clear and more persistent in raising an objection based on the definition of 'controlled substance offense,' . . . his actions were sufficient to preserve error." *Id.* at 272-73.

Here, the application of § 2X1.1(b)(1) turns entirely on whether "the defendant completed all the acts the defendant believed necessary for successful completion of the substantive offense or [whether] the circumstances demonstrate" that he was "about to" complete all such acts before he was apprehended. Therefore, in arguing to the district court that he did not complete all necessary acts and citing § 2X1.1, Rodriguez-Leos was arguing to the district court that he was entitled to a three-level reduction. *Cf. Ocana*, 204 F.3d at 588-89 (defendant's written objection "that the information in the [PSR] is not relevant conduct" sufficiently notified district court that defendant was objecting to base-level adjustment for her role in the offense). This argument was "sufficiently specific to alert the district court to the nature of the alleged error and to provide an opportunity for correction." *Neal*, 578 F.3d at 272.

The Government indicated at oral argument that Rodriguez-Leos could have pressed this written objection at sentencing. While this is true, such a lack of persistence is not fatal to Rodriguez-Leos's argument being preserved, as "once a party raises an objection in writing, if he subsequently fails to lodge an oral on-the-record objection, the error is nevertheless preserved for appeal." *United States v. Medina-Anicacio*, 325 F.3d 638, 642 (5th Cir. 2003); *see also Neal*, 578 F.3d at 273 ("The central inquiry is the specificity and clarity of the initial objection, not the defendant's persistence in seeking relief.").

In sum, we conclude that Rodriguez-Leos's written objection that "[i]t can't be said that defendant completed all necessary acts under [§] 2X1.1(a)"

was "sufficiently specific to alert the district court to the nature of the alleged error and to provide an opportunity for correction," *Neal*, 578 F.3d at 272, and "'g[a]ve the district court the opportunity to address' the gravamen of the argument presented on appeal," *Nesmith*, 866 F.3d at 679 (quoting *Garcia-Perez*, 779 F.3d at 281-82). We therefore conclude that Rodriguez's challenge was properly preserved.

## B.

Because Rodriguez-Leos properly preserved this argument, we review the district court's finding that he was not entitled to the three-level reduction for clear error. *See Soto*, 819 F.3d at 216 (district court's statement, for purposes of U.S.S.G. § 2X1.1, "that a defendant had completed all acts believed necessary for completion of the offense is a factfinding" (alteration omitted)). To prevail, Rodriguez-Leos must show that the finding is "implausible in light of the record as a whole." *United States v. Griffith*, 522 F.3d 607, 611-12 (5th Cir. 2008). The standard is "deferential," and we "will conclude that a finding of fact is clearly erroneous only if a review of all the evidence leaves us 'with the definite and firm conviction that a mistake has been committed.'" *United States v. Rodriguez*, 630 F.3d 377, 380 (5th Cir. 2011) (quoting *United States v. Castillo*, 430 F.3d 230, 238 (5th Cir. 2005)).

In the case of an attempt offense, the Guidelines direct that the offense level should be decreased by three "unless the defendant completed all the acts the defendant believed necessary for successful completion of the substantive offense or the circumstances demonstrate that the defendant was about to complete all such acts but for apprehension or interruption by some similar

event beyond the defendant's control."     U.S.S.G.    § 2X1.1(b)(1).[2]     The background note to § 2X1.1 explains this adjustment:

> In most prosecutions for conspiracies or attempts, the substantive offense was substantially completed or was interrupted or prevented on the verge of completion by the intercession of law enforcement authorities or the victim. In such cases, no reduction of the offense level is warranted. Sometimes, however, the arrest occurs well before the defendant or any co-conspirator has completed the acts necessary for the substantive offense. Under such circumstances, a reduction of 3 levels is provided under § 2X1.1(b)(1) or (2).

§ 2X1.1, cmt. (backg'd). The issue in this case, therefore, is not whether Rodriguez-Leos is guilty and will be punished. Instead, the question is whether he is entitled to a reduction for not "substantially complet[ing]" or being "on the verge of completi[ng]" the offense of exporting ammunition without a valid license. *Id.*

In *United States v. Waskom*, we explained that determining whether a reduction under § 2X1.1(b) is warranted "necessarily requires a fact-specific inquiry" that "resists a precise standard" and, in providing guidance to the inquiry, set forth four[3] non-exhaustive principles to guide district courts: (1) "focus[] on the substantive offense and the defendant's conduct in relation to that specific offense"; (2) no reduction is required "for a conspirator who has made substantial progress in his criminal endeavor simply because a

---

[2] Section 2X1.1(b)(2) contains a provision for conspiracies that parallels the attempt provision in § 2X1.1(b)(1). The Government argues Rodriguez's offense conduct is best described as a conspiracy, not an attempt. In an analogous situation, we noted the "nearly identical" language in the two subsections of § 2X1.1(b) and stated that we would only address the attempt subsection (rather than the conspiracy subsection, as urged by Government counsel at oral argument), because, inter alia, "the difference is immaterial to the outcome in this case." *Soto*, 819 F.3d at 217 n.3. We take the same approach here.

[3] *Waskom* set forth a fifth consideration, but following an amendment to the Guidelines, only four considerations remain applicable. *United States v. John*, 597 F.3d 263, 283 (5th Cir. 2010).

significant step remains before commission of the substantive offense becomes inevitable"; (3) a defendant is entitled to the reduction unless "the circumstances . . . demonstrate that the balance of the significant acts completed and those remaining tips toward completion of the substantive offense," considering the quality, not just the quantity, of the completed and remaining acts; and (4) "consider the temporal frame of the scheme and the amount of time the defendant would have needed to finish his plan, had he not been interrupted" because "[a]s the completion of the offense becomes more imminent, the reduction will become less appropriate."  179 F.3d 303, 308-09 (5th Cir. 1999) (citations omitted); *see also Soto*, 819 F.3d at 217-18 (applying *Waskom* considerations to the attempt reduction under § 2X1.1(b)(1)).

We previously found clear error in a district court's denying a three-level reduction under § 2X1.1(b)(1) where "all [the defendant] had done was buy ammunition and put it in his car" three days prior to his arrest, and there was no evidence as to when the defendant planned to deliver the ammunition.  *Soto*, 819 F.3d at 215, 218-20.  The scheme in *Soto* was similar to the arrangement here:  There, the defendant, Soto, had purchased the ammunition for someone named Compadre, Compadre had given him the money to buy the ammunition, the ammunition was destined for Mexico, and this was the second time Soto had purchased ammunition for Compadre.  *Id.* at 214-15.  Soto was on his way home from his mother's house when he was pulled over for a traffic violation and arrested after the ammunition was found in his vehicle's trunk.  *Id.* at 215, 219.  We held that the district court's finding that Soto "was on the verge of delivering the ammunition to [his co-conspirator]" was clearly erroneous because at the time of his arrest, the defendant was on his way home from his mother's house, and the sentencing documents "were silent as to the 'temporal frame of the scheme.'"  *Id.* (quoting *Waskom*, 179 F.3d at 308).

11

No. 19-40161

Similar to *Soto*, "all [Rodriguez-Leos] had done was buy ammunition." *Id.* at 220; *see also id.* at 219 (rejecting government's contention that "purchasing the ammunition was the most significant step in exporting the ammunition and the only remaining step for [the defendant] was to give the ammunition to [his co-conspirator]"). Moreover, at the time of his arrest, Rodriguez-Leos was not en route to deliver the ammunition; he was shopping at an auto parts store. *See id.* at 214-15, 220 ("No evidence before the district court supported its finding that Soto was en route to deliver the ammunition for smuggling to Mexico when he was arrested."). And unlike Soto, Rodriguez-Leos did not even have possession of the ammunition at the time of his arrest.

Further, there is no definitive evidence of a temporal timeframe here. The evidence based on previous encounters suggests only a possible timeframe. Rodriguez-Leos admitted to the agents that with his first purchase of ammunition, he received a call from El Chivo and delivered the ammunition on the same day he purchased it,[4] and he stated in his acceptance-of-responsibility letter that he was supposed to receive a phone call from El Chivo when he got to the Academy store. There was some evidence in the record, however, that for the second purchase, El Chivo might have called Rodriguez-Leos the day after he made the purchase. In his interview with agents prior to his arrest, the agent asked Rodriguez-Leos whether El Chivo was waiting for him to deliver the ammunition, and Rodriguez-Leos responded, "No no, . . . sometimes he calls me today, calls me tomorrow," and later explained that El Chivo "always takes one or two days to call." Therefore, the record does not show with clarity when El Chivo would have called Rodriguez-Leos or when

---

[4] While the Government contends that the "delivery occurred later on that day" with the second purchase, the record is not so clear. The record indicates only that the delivery to the Whataburger took place around 7:00 or 8:00 p.m.; it does not indicate that Rodriguez-Leos purchased the ammunition earlier that day.

the crime would have been completed had the officers not seized the ammunition and arrested Rodriguez-Leos.

Considering the language of the guidelines, the *Waskom* factors, and our decision in *Soto*, we conclude that the district court clearly erred in finding that Rodriguez-Leos "completed all the acts necessary and, but for the apprehension, was able to complete all the acts" necessary for completion of the substantive offense of the exportation of ammunition. *See* § 2X1.1(b)(1); *Soto*, 819 F.3d at 219. Significantly, this is not a case in which the defendant had actual possession of the ammunition and was on his way to deliver it to another person. Here, the agents apprehended Rodriguez-Leos "well before [he] or any co-conspirator ha[d] completed the acts necessary for the substantive offense," so that it cannot be said that the offense was "on the verge of completion." § 2X1.1, cmt. (backg'd).

The *Waskom* factors support our conclusion. First, the completion of the exportation offense was not "inevitable" but for one remaining significant step. *See Waskom*, 179 F.3d at 308 (no reduction required "for a conspirator who has made substantial progress in his criminal endeavor simply because a significant step remains before commission of the substantive offense becomes inevitable"); *cf. United States v. Torres-Vazquez*, 770 F. App'x 164, 167 (5th Cir. 2019) (finding no clear error in the district court's declining to apply the reduction where the defendant had made substantial progress toward completing the substantive offense of alien smuggling and "the only step remaining was the actual transportation of the undocumented individuals").[5]

---

[5] The dissent relies on *Torres-Vazquez* to support the proposition that Rodriguez is ineligible for the § 2X1.1(b) reduction. Besides providing only persuasive authority, we find *Torres-Vasquez* distinguishable. When Torres-Vasquez was arrested, he had arranged to pick up the individuals in a hotel parking lot and was in the process of looking for them to transport them across the border. Here, Rodriguez-Leos was not in the process of retrieving

No. 19-40161

As explained in further detail below, several significant steps remained before commission of the exportation offense became inevitable.

Second, completion of the exportation offense was not "imminent." *See Waskom*, 179 F.3d at 308 (instructing courts to consider "the amount of time the defendant would have needed to finish his plan, had he not been interrupted" and "the reduction will become less appropriate" "[a]s the completion of the offense becomes more imminent"). Rodriguez-Leos needed a significant amount of time to finish his plan, given that he had to receive and answer a call from El Chivo that was expected to come at some point that day or the next day, drive from Hidalgo to McAllen to recover possession of the ammunition, and drive back to Hidalgo to deliver the ammunition.

And finally, in both quantity and quality, the balance of the significant acts completed and those remaining does not tip toward completion of the substantive offense. *See Waskom*, 179 F.3d at 308 (explaining that "the circumstances *must* demonstrate that the balance of the significant acts completed and those remaining tips toward completion of the substantive offense" "in order to support a denial of the reduction under § 2X1.1(b)(2)" (emphasis added)). When Rodriguez-Leos was arrested, only the first two steps of the scheme had been completed: he had met El Chivo at the port of entry to collect money to purchase ammunition and had purchased the ammunition. The completion of Rodriguez-Leos's portion of the offense was dependent on several things that had not yet occurred. El Chivo had to call and instruct Rodriguez-Leos regarding when and where to deliver the ammunition.[6] Even after securing such instructions, Rodriguez-Leos would have had to decide to

---

or delivering the ammunition when he was apprehended; instead, he was shopping at a used auto parts store.

[6] The record does not indicate that Rodriguez-Leos had received a phone call from El Chivo.

14

carry them out: he had to drive from Hidalgo to McAllen,[7] recover possession of the ammunition, and then, if this delivery was to be similar to the prior two, drive from McAllen to the Hidalgo Whataburger to deliver the ammunition to an unidentified individual.  And of course, the final step—delivery of the ammunition—depended on the unidentified person meeting Rodriguez-Leos at the Whataburger and receiving the delivery of the ammunition.

The district court's finding that Rodriguez-Leos was "about to" complete or "on the verge of" completing all the acts by him and his co-conspirators necessary for completion of the exportation offense but for his apprehension, *see* § 2X1.1(b)(1), *id.* cmt. (backg'd), leaves us "with the definite and firm conviction that a mistake has been committed."  *Rodriguez*, 630 F.3d at 380 (quoting *Castillo*, 430 F.3d at 238); *see Soto*, 819 F.3d at 219-20; *Waskom*, 179 F.3d at 308-09 (explaining that "the question is only whether [defendants] were 'about to'" complete all acts they thought necessary to commit the substantive offense).  Rodriguez-Leos was arrested "well before [he] or any [of his] co-conspirator[s] ha[d] completed the acts necessary for the substantive offense." § 2X1.1, cmt. (backg'd).

For the foregoing reasons, we VACATE Rodriguez-Leos's sentence and REMAND for resentencing.

---

[7] While the record reveals that these towns neighbor each other, it does not reveal how far the home in McAllen was from the used auto parts store or the Whataburger.

No. 19-40161

DON R. WILLETT, Circuit Judge, dissenting:

My review of the record does not "leave[] [me] 'with the definite and firm conviction that a mistake has been committed'" by the district court.[1] So I must respectfully dissent.

\*      \*      \*

As a preliminary matter, I disagree with the majority opinion's determination that we should review for clear error instead of plain error.[2] Rodriguez-Leos's claim on appeal is that the district court erred in failing to apply a 3-level reduction to his sentence. But Rodriguez-Leos never argued for such a reduction before the district court. Sure, "[t]here is no bright-line rule for determining whether a matter was raised below," but a party wishing to preserve an argument for appeal "must press and not merely intimate the argument during the proceedings before the district court."[3] For an argument to be adequately pressed, "[t]he raising party must present the issue so that it places the opposing party and the court on notice that a new issue is being raised" and the district court must have an opportunity to rule on it.[4]

Rodriguez-Leos's objection to Paragraph 21 of the PSR reflects an objection to the imposition of a base-level increase, not to the omission of a 3-level decrease. Tellingly, the only language that could be said to have preserved

---

[1] *United States v. Rodriguez*, 630 F.3d 377, 380 (5th Cir. 2011) (quoting *United States v. Castillo*, 430 F.3d 230, 238 (2005)).

[2] In addition to demonstrating that the district court's error was clear or obvious, plain error review requires Rodriguez-Leos to also demonstrate that the error affected his substantial rights. *See Puckett v. United States*, 556 U.S. 129, 135 (2009). If he makes such a showing, we may then exercise our discretion to remedy the error, but only if the error "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Id.* (internal quotations omitted).

[3] *United States v. Soza*, 874 F.3d 884, 889 (5th Cir. 2017) (internal quotations and alterations omitted).

[4] *Id.* (internal quotations omitted).

## No. 19-40161

Rodriguez-Leos's claim for appeal is the statement that "[i]t can't be said that defendant completed all necessary acts under U.S.S.G. 2X1.1(a)." But the section of the sentencing guidelines that authorizes a sentence reduction is § 2X1.1(b)(1),[5] to which Rodriguez-Leos makes no reference.

The majority opinion concludes that Rodriguez-Leos merely cited the wrong subsection of U.S.S.G. § 2X1.1, and because he "quot[ed] the language from § 2X1.1(b) while citing § 2X1.1(a), [he] addressed the proper subsection in substance, but not in name."[6] Though we have excused similar blunders in other cases,[7] the circumstances here do not warrant the same result. The entirety of Rodriguez-Leos's objection to Paragraph 21 concerns why the district court should not impose an enhancement to his sentence—arguing that § 2X1.1 should not apply at all. In the context of the objection, Rodriguez-Leos seems to have been arguing that the court should not impose the enhancement because he did not actually complete the offense. His objection on appeal is materially different. He no longer contests that § 2X1.1 should apply; he now believes that under that section—the one he previously rejected being applicable—he should receive a 3-level reduction. Because Rodriguez-Leos did not raise this issue in the district court with sufficient specificity,[8] and certainly did not *press* the argument, I would review his claim for plain error.

---

[5] U.S.S.G. § 2X1.1(b)(1) ("If an attempt, decrease by 3 levels, unless the defendant completed all the acts the defendant believed necessary for successful completion of the substantive offense or the circumstances demonstrate that the defendant was about to complete all such acts but for apprehension or interruption by some similar event beyond the defendant's control.").

[6] Maj. Op. at 7.

[7] *See United States v. Ocana*, 204 F.3d 585, 589, 589 n.2 (5th Cir. 2000); *United States v. Neal*, 578 F.3d 270, 272 (5th Cir. 2009).

[8] *See Neal*, 578 F.3d at 272.

But even assuming that Rodriguez-Leos *did* preserve this issue for appeal, he has not demonstrated clear error on the part of the district court. A district court's factual determination is not clearly erroneous, "[u]nless the factual finding is *implausible* in light of the record as a whole."[9] This "deferential" standard of review prohibits us from overturning a district court simply because we would have weighed the evidence differently or reached a different conclusion if we had been sitting as the trier of fact.[10] To the contrary, we may only find clear error "if a review of all the evidence leaves us with the definite and firm conviction that a mistake has been committed."[11]

Here, the majority opinion's balance of factors demonstrates a "close call": two steps completed, three steps remaining; some evidence that the drop-off would occur the same day, some evidence it would occur the next day; certain similarities to *Soto*, key distinctions from *Soto*. And it is this closeness that forecloses "the *definite* and *firm* conviction" necessary to find clear error and reverse the district court.

The parties reference two cases to guide our review: *Soto*[12] and *Torres-Vazquez*.[13] In *Soto*, we concluded that the district court committed clear error in failing to provide a 3-level reduction where (1) the defendant had not delivered the ammunition to his co-conspirator; (2) there was no evidence regarding the arrangements or plans for making such a delivery; (3) the ammunition was in the truck at the time of his arrest, but there was no evidence to contradict his testimony that he was simply driving to his mother's,

---

[9] *United States v. Griffith*, 522 F.3d 607, 612 (5th Cir. 2008) (emphasis added).

[10] *Rodriguez*, 630 F.3d at 380.

[11] *Id.* (internal quotation omitted).

[12] *United States v. Soto*, 819 F.3d 213 (5th Cir. 2016).

[13] *United States v. Torres-Vazquez*, 770 F. App'x 164 (5th Cir. 2019) (unpublished).

not heading to a delivery; and (4) even though Soto had made a delivery once before, there was no evidence of the circumstances of that transaction to provide information about the likely circumstances of the incomplete transaction.[14]

In *Torres-Vazquez*, on the other hand, we concluded that the district court did not err in finding that the defendant was about to commit the attempted offense.[15] There, Torres-Vazquez had taken substantial steps toward transporting undocumented individuals across the border into Texas, but he had not actually completed the crime.[16] At the time of his arrest, Torres-Vazquez did not have the individuals in his vehicle; he had made arrangements to pick them up in a hotel parking lot and was in the process of looking for them when he encountered border patrol officers. These circumstances, the panel concluded, demonstrated that "Torres-Vazquez's offense was 'interrupted or prevented on the verge of completion by the intercession of law enforcement authorities.'"[17]

This case is not on all fours with either *Soto* or *Torres-Vazquez*, again demonstrating the closeness of the question before us. Certainly, it is tempting to conclude that the facts are more similar to *Soto* because our case involves the same crime, but the circumstances diverge on key points. For instance, in *Soto*, the defendant had purchased the ammunition three days prior to his arrest, and there was no information regarding when delivery would actually be made. In this case, however, Rodriguez-Leos had purchased the ammunition that morning and was expecting to make the delivery that same day or evening

---

[14] *Soto*, 819 U.S. at 219.

[15] 770 F. App'x at 167.

[16] *Id.*

[17] *Torres-Vazquez*, 770 F. App'x at 167 (quoting § 2X1.1, cmt. backg'd).

based on his prior experiences with delivering ammunition to El Chivo.[18] Rodriguez-Leos also knew he would hand off the ammunition in the parking lot of the Jackson Street Whataburger and that he would likely deliver it to an individual driving a Dodge Caliber. Unlike in *Soto*, where the court was persuaded by the lack of information regarding a potential delivery, Rodriguez-Leos here had all the information he needed except for the exact time. And he was expecting a phone call with that detail at any moment.[19]

Despite these glaring distinctions between our case and *Soto*, specifically that two of the four factors that persuaded the *Soto* court favor the opposite result in our case, the majority opinion finds clear error. To do so, it takes great strides to count the number of steps remaining, which, in its view, amounts to three: (1) receive and answer a call from El Chivo; (2) drive from Hidalgo to McAllen to retrieve the ammunition; and (3) drive from McAllen to the Hidalgo Whataburger to deliver the ammunition.[20] But the "quantity" of steps completed or remaining is just one subfactor of the four-factor inquiry set forth in *United States v. Waskom*.[21] We are cautioned against giving undue weight

---

[18] The majority opinion avers that "the record is not so clear" as to whether Rodriguez-Leos previously delivered the ammunition on the same day or the next day because "[t]he record only indicates that the [second] delivery to the Whataburger took place around 7:00 or 8:00 p.m.; it does not indicate that Rodriguez-Leos purchased the ammunition earlier that day." Maj. Op. at 12 & n.4. Assuming there is ambiguity in the record, the parties' briefs on appeal are not so unclear. In its brief, the Government twice stated that Rodriguez-Leos made his second delivery on the same day that he purchased the ammunition (at 7:00 or 8:00 p.m. that evening). And Rodriguez-Leos, represented by competent counsel, made no effort to refute this assertion in his reply brief. I would not be so quick to cry ambiguity where the defendant himself does not refute the Government's statement of facts.

[19] The majority opinion seems to doubt whether Rodriguez-Leos was expecting the phone call from El Chivo that day or the next, *see* Maj. Op. at 12–13, but Rodriguez-Leos himself seemed confident that El Chivo would ring any minute and, in fact, told the district court that he had expected to receive the phone call when he got to the Academy to buy ammunition.

[20] Maj. Op. at 14.

[21] 179 F.3d 303, 308–09 (1999) (instructing courts to look at the circumstances, considering the quality, not just the quantity, of the completed and remaining acts); *see also*

to step-counting quantity alone, lest inventive arithmetic yield a preferred number of "significant steps." Certainly, Rodriguez-Leos had to retrieve the ammunition from its hiding spot—a delay of his own creation—before he could drive it to the Whataburger. He also had to put his key in the ignition and turn the car on. The number of remaining steps is just one consideration of many, in part because step-counting is no hard science, yet this is the basket holding all the majority opinion's eggs.

If counting steps is our true guide, then *Torres-Vazquez* provides a clear answer here. Torres-Vazquez had completed only two steps (just like Rodriguez-Leos): he'd made arrangements to pick up undocumented individuals in a parking lot, and he'd driven to the parking lot. Three steps remained (just like for Rodriguez-Leos): he needed to find the individuals, load them into his car, and drive them across the border. But, because the number of significant steps completed and remaining are in the eye of the counter, we must consider the circumstances holistically to answer whether a defendant was "about to" complete the crime in question. In reality, Torres-Vazquez, just like Rodriguez-Leos, had completed all of the necessary acts except for the actual drop-off, which Rodriguez-Leos had planned to do that same day but for the interception of law enforcement.[22] He had the who, the what, and the where; he was just waiting for the imminent "when."

---

*United States v. John*, 597 F.3d 263, 283 (5th Cir. 2010) (clarifying that only four of the five *Waskom* factors remain effective).

[22] The majority opinion claims that Rodriguez-Leos could not have been "about to" complete his portion of the offense, in part, because "the final step—delivery of the ammunition—depended on the unidentified person meeting Rodriguez-Leos at the Whataburger and receiving the delivery of the ammunition." Maj. Op. 15. Likewise, the completion of Torres-Vazquez's crime depended on the undocumented aliens actually showing up, entering his vehicle, and staying with the plan until they reached the border. Yet we still found that the district court did not clearly err in declining to reduce Torres-Vazquez's sentence because, under the totality of the circumstances, its determination was plausible.

Whether Rodriguez-Leos was "about to" deliver the ammunition to El Chivo's men is a close question, but on balance the district court's conclusion is plausible. And if the district court's conclusion is plausible, we cannot possess the definite and firm conviction necessary to overturn it.

I respectfully dissent.