**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 22, 2023**

**Christopher M. Wolpert**
**Clerk of Court**

<u>**PUBLISH**</u>

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

ASAEL LINARES,

    Defendant - Appellant.

No. 21-3210

_____

**Appeal from the United States District Court**
**for the District of Kansas**
**(D.C. No. 2:21-CR-20010-JAR-1)**

_____

Daniel T. Hansmeier, Appellate Chief (Melody Brannon, Federal Public Defender, and Kayla Gassmann, Assistant Federal Public Defender, with him on the briefs), Office of the Federal Public Defender, Kansas City, Kansas, for Defendant-Appellant.

Bryan C. Clark, Assistant United States Attorney (Duston J. Slinkard, United States Attorney, District of Kansas, and James A. Brown, Assistant United States Attorney, Chief, Appellate Division, with him on the brief), Office of the United States Attorney, Kansas City, Kansas, for Plaintiff-Appellee.

_____

Before **TYMKOVICH**, **SEYMOUR**, and **PHILLIPS**, Circuit Judges.

_____

**TYMKOVICH**, Circuit Judge.

_____

Asael Linares was indicted as a felon in possession of a firearm after an attempted carjacking. He pled guilty but objected to a sentencing enhancement and

the failure to apply a sentencing decrease proposed by the government, arguing that he did not complete an attempted carjacking, nor did he meet the required mental state for the carjacking enhancement.  Finding that Mr. Linares was about to complete a carjacking while possessing an AK-47, the district court overruled Mr. Linares's objections and sentenced him to 63 months.  Mr. Linares challenges the enhancements in this appeal.

We affirm.  The district court did not err in concluding that the facts—the presence of a rifle while confronting a car owner, demanding the keys, approaching the car, threatening the car owner and her family while they were calling 911, and leaving the scene when the victims continued calling 911—met the Sentencing Guideline requirements for carjacking.

## I.  Background

This case arises from an encounter between Mr. Linares and a family in a Kansas City neighborhood.  The victim, Marian Diaz, her brother, Ruben, and his young son, were cleaning up scrap construction materials in Ms. Diaz's front yard.  During the project, Ms. Diaz had parked her car in the yard.  Mr. Linares drove down the street and parked his car in front of the home.  Mr. Linares asked for a ride to a gas station, claiming car troubles, but Ruben declined.

Ms. Diaz eventually moved her car and parked it on the street.  She left the car, which had a remote "automatic start feature," locked but still running.  As Ms. Diaz walked back to her yard, Mr. Linares walked to the driver's side door of her car.  He was carrying a semi-automatic rifle, later identified as an AK-47.  When Ruben saw the rifle,

2

he and the others hurried into the house.  At the same time, Ms. Diaz remotely turned off the engine to her car.  Then Mr. Linares turned his attention to the house and demanded that Ms. Diaz give him the keys.

Ruben returned to the yard while calling 911 on his phone.  On the 911 call, he reported that Mr. Linares had an AR-15 or AK gun and was trying to steal his sister's car.  He also told the operator that Mr. Linares had ordered him to hang up the phone or he threatened to come back ("I'll come back and kill you").  Having been prevented from stealing the vehicle, Mr. Linares returned to his car and drove away.  Police soon arrested Mr. Linares at a nearby gas station.  Officers discovered two handguns on Mr. Linares and another two firearms in the car, including an AK-47 and a pistol.

A grand jury indicted Mr. Linares for unlawful possession of firearms by a convicted felon under 18 U.S.C. § 922(g)(1).  He pled guilty without a plea agreement.  At sentencing, agreeing with the presentence report, the district court applied § 2K2.1(c)(1)(A) of the U.S. Sentencing Guidelines (USSG), which applies an enhancement to a sentence where a firearm was used in connection with the substantive offense of attempted robbery.  (Applying USSG § 2X1.1(b)(1)(cross-reference) and USSG § 2B3.1 (attempted carjacking)).  Combining the offense level and Mr. Linares's criminal history category, the district court calculated his guideline range to be 63 to 78 months' imprisonment.

The court sentenced him to 63 months of imprisonment, the bottom of the guideline range.

3

## II.  Analysis

Mr. Linares makes two challenges to his sentence.  He contends the district court (1) erred in rejecting a three-level decrease for an attempt under § 2X1.1(b)(1) and (2) used the incorrect definition of carjacking to apply a two-level enhancement under § 2B3.1(b)(5).

### A.  Attempted Vehicle Robbery - § 2X1.1(b)(1)

Mr. Linares argues the district court erred by rejecting a three-level decrease because he did not complete the crime of vehicle robbery.

We review legal questions de novo and the district court's factual findings for clear error, giving due deference to its application of the guidelines to the facts.  *United States v. Maldonado-Passage*, 4 F.4th 1097, 1103 (10th Cir. 2021).  Under the clear error standard, "we may reverse only if the district court's finding lacks factual support in the record or if, after reviewing all the evidence, we have a definite and firm conviction that the district court erred."  *Middleton v. Stephenson*, 749 F.3d 1197, 1200 (10th Cir. 2014).[1]

Mr. Linares relies on USSG § 2X1.1(b)(1), which provides for a three-level decrease in a defendant's offense level calculation for an incomplete, or attempted, crime. An attempt requires that the defendant (1) intended to commit the substantive offense, and (2) took a substantial step towards commission of the substantive offense.  *United*

---

[1] Mr. Linares advocates for a burden shifting approach, which would require the government to prove the exceptions apply after the defendant proves attempt.  For our purposes here, it does not matter who has the burden to establish certain aspects of the guideline.

4

*States v. Washington*, 653 F.3d 1251, 1264 (10th Cir. 2011).  A defendant, however, will not receive the decrease if his conduct meets one of the two exceptions to the attempt guideline:

> [1] the defendant completed all the acts the defendant believed necessary for successful completion of the substantive offense or [2] *the circumstances demonstrate that the defendant was about to complete all such acts but for apprehension or interruption by some similar event beyond the defendant's control.*

USSG § 2X1.1(b)(1) (brackets and emphasis added).  The second exception is at issue here.

The guidelines explain:

> In most prosecutions for conspiracies or attempts, the substantive offense was substantially completed or was *interrupted or prevented* on the verge of completion *by the intercession of law enforcement authorities or the victim.*  In such cases, no reduction of the offense level is warranted.

USSG § 2X1.1, comment (emphasis added).  This is a fact intensive inquiry.  *See United States v. Soto*, 819 F.3d 213, 217 (5th Cir. 2016).

The district court found by a preponderance of the evidence that Mr. Linares's acts met the second attempt exception; he was about to complete the substantive offense of vehicle robbery under Kansas law, K.S.A. § 21-5420,[2] but for apprehension or interruption by some similar event beyond his control.  In reaching this conclusion, the

---

[2]  That provision prohibits "knowingly taking property from the person or presence of another by force or by threat of bodily harm to any person."  K.S.A. § 21-5420(a).

5

district court relied on a police officer's testimony, home surveillance video, and a recording of the 911 call. In particular, the court found:

- Mr. Linares "approached the Ford Fusion, was very close to it, backed off, came back up to it, at some point says leave the keys, I've got you."
- Mr. Linares "essentially demand[ed]" the victims give him the keys.
- Mr. Linares interacted with Ruben while Ruben was calling the police on 911, and then told Ruben not to call the police.
- Mr. Linares was aware of the 911 call, threatened Ruben, and said, "I'll come back and kill you."

R., Vol. 3 at 69–70.

In resisting these findings, Mr. Linares focuses on the court's conclusion that the 911 call caused Mr. Linares to back away from the car and abandon his plan to steal the car. But the recording of the 911 call and statements made by Ruben in the aftermath of the incident support the district court's conclusion. During the 911 call, Ruben made an unprompted statement that Mr. Linares "is telling me not to call because he's going to come back for me, whatever." Supp. R., Vol. 2 Ex. 1 (911 Recording) (in a later interview Ruben understood Mr. Linares as saying "I'll come back and kill you"). Ruben's statements demonstrate that Mr. Linares was close enough to Ruben to see what he was doing and talk to him. The record supports the district court's findings that Ruben was in the yard, the two interacted, Mr. Linares was aware of the 911 call, and then Mr. Linares abandoned his efforts to steal the car because of the 911 call.

With this factual basis, the district court concluded Mr. Linares's actions in approaching the car multiple times met the "complete all such acts" component of the

6

attempt exception, and that the 911 call constituted an interruption by an event beyond Mr. Linares's control. In other words, Mr. Linares was about to complete the substantive offense of vehicle robbery but for interruption by the victims.[3]

Our conclusion is consistent with several of our cases. In *United States v. Owens*, for example, we declined to apply the reduction where the defendant stopped abruptly in front of the victim's car, pulled a gun out of his pocket, told the victim to "Get out!", pointed the gun at the victim, and attempted to open the locked door. 20 F. App'x 785, 786 (10th Cir. 2001). There we explained the combination of the victim's decision to drive away, and the steps taken to steal the car met the second § 2X1.1(b)(1) exception. *Id.* at 788. Likewise, in *United States v. Orr*, we upheld a district court's decision to decline to apply the reduction where a defendant confessed to his escape plans. 172 F.3d 64, 1999 WL 51827, at *1, *4 (10th Cir. 1999) (unpublished table decision). We noted that the prisoner's mother had encouraged him to confess and that he had only minor details left to complete the escape.

Mr. Linares, like the defendant in *Owens*, only needed the victims to hand over the keys for him to complete the offense of stealing the car. He had repeatedly approached the car, hovered near it, demanded the keys, and verbally threatened Ruben. While he did not point his gun at the victims like the defendant in *Owens*, Mr. Linares allowed his firearm to be visible to the victims and the threat was

---

[3] The attempt exception requires "the circumstances demonstrate that the defendant was about to complete all such acts," not that the defendant intended to complete all such acts as the district court stated. Even so, as discussed above, the facts found by the district court support applying the second attempt exception.

7

obvious. In addressing the USSG § 2B1.1 issue, the district court remarked, "[i]t would be hard to believe that someone would not be intimidated by seeing someone in possession of an AK-47 or AR-15, whatever it was." R., Vol. 3 at 67. The district court's findings of fact support the conclusion that Mr. Linares's actions met the "about to complete" attempt exception.

Similarly, as noted above, the district court's findings regarding the 911 call and Mr. Linares's awareness of the 911 call are sufficient to support the apprehension or interruption component of the exception. Mr. Linares tried to stop the 911 call but failed. Mr. Linares's attempt to stop the call is the "primary reason [he] opted not to carry out the final stages of his [carjacking]." *Orr*, 1999 WL 51827, at *4. Mr. Linares was still hovering near the car when Ruben made the 911 call. Despite his threats, Mr. Linares was unable to prevent Ruben from calling the police. In short, it seems obvious the fear of a police response motivated Mr. Linares to abandon his attempt. And the district court's findings show Mr. Linares's awareness that police would be arriving soon satisfied the interruption requirement of the exception.

Our conclusion is likewise consistent with cases from other circuits. *See, e.g.*, *United States v. Rill*, 592 F.3d 863, 865–66 (8th Cir. 2010) (explaining in an attempted prison escape case that the "fact that the plexiglass was stronger than Rill expected is an interruption by some similar event beyond [his] control"); *United States v. Shakur*, 7 F. App'x 289, 289 (4th Cir. 2001) (upholding district court's refusal to apply reduction where victim's car was equipped with an anti-theft device which prevented him from starting the engine); *United States v. Chapdelaine*, 989

F.2d 28, 35 (1st Cir. 1993) (upholding refusal to apply reduction where evidence showed that defendant and comrades arrived at the mall prepared and equipped to "carry out a robbery and were thwarted only by the unexpected early departure of the Wells Fargo truck").

The district court did not err in concluding Mr. Linares was about to complete the carjacking but for his fear of apprehension by law enforcement or interruption by a victim thwarted his plans.

### B. Carjacking—Intent to Cause Death or Bodily Harm – U.S.S.G § 2B3.1(b)(5)

Mr. Linares next argues the district court erred by failing to apply the federal definition of carjacking found in 18 U.S.C. § 2119. He contends the court erred by failing to find that he intended to cause death or serious bodily harm in the attempt, as required by § 2119.[4] We disagree.

Sentencing Commission Guidelines Section 2B3.1(b)(5) increases a sentence if the "offense involved carjacking." The comment to § 2B3.1 defines "carjacking" as "the taking or attempted taking of a motor vehicle from the person or presence of another by *force and violence or by intimidation*." USSG § 2B3.1, comment. (n.1) (emphasis added).

In contrast, § 2119 defines carjacking as when a person "with the intent to cause death or serious bodily harm takes a motor vehicle that has been transported, shipped, or

---

[4] The government argues Mr. Linares waived this argument by not raising it below. We find Mr. Linares sufficiently raised this argument to the district court by contending that the statutory definition of carjacking applied.

received in interstate or foreign commerce from the person or presence of another by force and violence or by intimidation, or attempts to do so." 18 U.S.C. § 2119. The statute requires the "intent" to cause death or serious bodily harm, while the guidelines do not.

But the Sentencing Commission does not have "to use the word [in a guideline] the same way that the statute did." *United States v. Thomas*, 939 F.3d 1121, 1130 (10th Cir. 2019). "The Commentary that accompanies the guideline . . . may interpret the guideline or explain how it is to be applied." USSG § 1B1.7. "Failure to follow such commentary could constitute an incorrect application of the guidelines." *Id.* Indeed, the "commentary [is] essential in correctly and uniformly applying the guidelines." *United States v. Smith*, 900 F.2d 1442, 1447 (10th Cir. 1990) (internal quotations omitted). Guideline application notes are "authoritative unless [they] violate[] the Constitution or a federal statute, or [are] inconsistent with, or a plainly erroneous reading of, that guideline." *Stinson v. United States*, 508 U.S. 36, 38 (1993). Applying these principles, the district court correctly used the definition in the guidelines.

Mr. Linares advances four arguments as to why the district court should have applied the § 2119 statutory definition, instead of the Sentencing Commission's definition: (1) the history of Anti Car Theft Act and comment show that the Commission intended to use the same definition as Congress; (2) § 2B3.1 references § 2119; (3) the comment definition is inconsistent with the guideline text and plainly erroneous; and (4) we should not defer to the comment definition because it paraphrases statutory language. We are unpersuaded.

10

To understand Mr. Linares's first argument, it helps to consider the history of § 2119, the guidelines, and the commentary to the guidelines. In 1992, Congress passed the Anti Car Theft Act, which defined "armed carjacking" without a mens rea element. In 1993, the Sentencing Commission added the 1992 definition of carjacking to comment 1 of § 2B3.1 but excluded the statute's firearm component. The following year, Congress added a mens rea requirement to the carjacking definition in the Anti Car Theft Act and removed the firearm component. But the Sentencing Commission never amended its definition of carjacking.

Mr. Linares contends the Commission's nearly identical 1993 carjacking definition demonstrates its intention to mirror Congress's definition.

In our view, the district court used the correct "carjacking" definition—the comment definition that lacks a mens rea component. The Commission's decision not to modify the comment after Congress amended the previous § 2119 definition suggests the Commission's "satisfaction with the interpretation." *Thomas*, 939 F.3d at 1131. And persuasive authority from two other circuits underscores using the comment definition in this context. *See United States v. Bates*, 213 F.3d 1336, 1340 (11th Cir. 2000) (explaining that "the Sentencing Commission has had ample time to alter the guidelines to comport with the amended statute, but has not changed the guidelines"); *United States v. Knighton*, 171 F. App'x 939, 942 (3d Cir. 2006) ("The Application Notes do not state that their definition of carjacking tracks the elements of the carjacking statute and there is no indication that the Sentencing Commission intended for the terms of the statute to control the definition."). We agree with these cases.

11

As for Mr. Linares's second argument, we recognize that § 2B3.1 includes a citation to § 2119. But nothing in the guidelines or comment 1 requires the court to import the substantive elements of § 2119. It is axiomatic that the Commission knows how to use a cross-reference to incorporate a particular statutory definition. *See Thomas*, 939 F.3d 1128–29 (discussing that the Commission's use of statutory cross-reference in a guideline signifies its decision to not include such a cross-reference in other guidelines is intentional). The Commission, for example, incorporated Congress's definition of murder in USSG § 2B3.1(c)(1). No such cross-reference exists for the definition of carjacking. *See Knighton*, 171 F. App'x at 942.

Third, Mr. Linares's arguments that the comment definition is inconsistent and plainly erroneous are conclusory and recite the same history-based arguments previously addressed. Besides the historical background, Mr. Linares fails to fill the gap establishing that the § 2119 definition applies to this guideline enhancement.

Finally, Mr. Linares insists that because the Commission elected to use a nearly identical carjacking definition to the one in the 1992 Act, it intended to copy that definition as it evolved through congressional action. While the comment definition parallels the 1992 definition, the Commission's inaction in amending the definition to follow congressional action speaks for itself. *See Bates*, 213 F.3d at 1340.

In sum, the district court used the correct "carjacking" definition located in Comment 1 of § 2B3.1. Mr. Linares's enhancement was therefore not in error.

## III.  Conclusion

Mr. Linares is not eligible for a three-level sentencing decrease for attempt because he would have completed the crime but for an interruption.  And Mr. Linares is eligible for a two-level sentencing increase because the district court used the correct carjacking definition.  We affirm the district court.